Sucesión de Juana Sorbá Corujo, compuesta de sus hijos Josefa, Ramón y Luz María Viñas Sorbá, la última representada y asistida de su tutor Matías Ruiz, demandantes y apelados, *v.* Manuel Viñas y su esposa Marcelina Sorbá, demandados y apelantes.

No. 6416—*Sometido:* Diciembre 11, 1934. *Resuelto:* Noviembre 8, 1935.

---

* Nota: Véase el prefacio.

*E. H. F. Dottin,* abogado de los apelantes; *Dubón & Ochoteco,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

██ Antonio M. Sorbá falleció *ab intestato* el día 3 de diciembre de 1927, dejando como herederos forzosos a su viuda Carmen Corujo, a su hija Marcelina Sorbá Corujo de Viñas, y a sus tres nietos, los demandantes en este recurso, quienes heredaron de su abuelo por representación de su difunta madre Juana Sorbá Corujo. Al tiempo de su muerte el abuelo tenía un crédito con J. Ochoa & Hno., en San Juan, por la suma de $40,000, como resultado de ciertos depósitos efectuados por él por espacio de diez o quince años con anterioridad a su muerte en 1927. El 17 de enero de 1928 tuvo lugar la partición de la herencia y nadie hizo referencia a esta importante cuenta. La prueba tiende fuertemente a demostrar que los demandantes ignoraban la existencia de la misma.

Sin embargo, en febrero o marzo, 1928, Manuel Viñas, uno de los aquí demandados y esposo de Marcelina Sorbá, la otra demandada (según parte del testimonio), visitó a J. Ochoa & Hno. y al inquirir sobre la existencia de la cuenta de $40,000 fué informado por el cajero, Arturo González, que ellos tenían allí cierto documento en relación con el dinero. Este lee así:

"Pagaremos a Don Antonio M. Sorbá en su residencia en Santurce, P. R. el día veintiséis de noviembre de mil novecientos treinta y dos, la suma de CUARENTA MIL DÓLARES que ha (sic) tiene abonada en su cuenta, cuya suma devengará intereses al tipo de siete por ciento anual que serán pagados mensualmente o cuando el acreedor los solicite después de devengados.

"Queda expresamente convenido por deseo del acreedor, que si éste falleciese antes del vencimiento de esta obligación, los intereses devengados deberán ser pagados a su legítima hija doña Marcelina Sorbá de Viñas. Al vencimiento, el capital también deberá pagarse a la referida señora Sorbá de Viñas si así ella lo solicitare. San Juan, P. R., Noviembre 26, 1927. (Fdo.) J. Ochoa & Hno."

Así pues, se verá que el documento tan sólo está suscrito por el representante de J. Ochoa & Hno. y no por Antonio M. Sorbá, quien falleció una semana después de haberse realizado el supuesto otorgamiento. Desde agosto, 1928, hasta allá para el 1930, los intereses adeudados sobre los $40,000, ascendentes a $8,400, fueron pagados a la aludida hija Marcelina Sorbá de Viñas enteramente sin el conocimiento de los demás herederos. En marzo 5, 1929, falleció la viuda de Antonio M. Sorbá, y en su testamento no se hizo referencia alguna a los $40,000.

A instancias de los acreedores, J. Ochoa & Hno. fué adjudicada en quiebra el 23 de septiembre de 1931. La prueba no controvertida fué que Marcelina Sorbá de Viñas radicó en los procedimientos de quiebra, en su propio nombre, prueba de la reclamación de los $40,000, sin revelar jamás a ninguno de sus coherederos la existencia del mencionado crédito.

El presente recurso, que es esencialmente uno sobre liquidación de cuenta, se inició el 8 de abril, 1932, y fué tan sólo entonces que los demandados ofrecieron entregar a los demandantes la parte proporcional de los intereses recaudados. Marcelina Sorbá entonces sostuvo que no había habido apropiación alguna de la cuenta y que fué parcialmente en beneficio de los herederos que ella radicó prueba de la reclamación contra J. Ochoa & Hno. La Corte de Distrito de San Juan dictó sentencia en favor de los demandantes.

En el juicio la prueba tendió a demostrar que cuantas veces Antonio M. Sorbá hizo depósitos de dinero con J. Ochoa & Hno., se le daba un recibo, según el cual, mediante aviso con 30 días de antelación, podía en cualquier tiempo exigir el pago de la suma depositada. Estos recibos de depósito fue-

ron hallados en poder del cajero de J. Ochoa & Hno., Arturo González. Este declaró que tales recibos no le habían sido entregados por Sorbá. Empero, explicó el documento existente en este caso, diciendo que hallándose Sorbá en el hospital como una semana antes de su muerte, y a instancias suyas, González redactó dicho documento, pero que Sorbá falleció antes de firmarlo. Que Sorbá manifestó que quería favorecer a su hija.

Por los autos y por el análisis de la prueba hecho por la corte inferior, nos sentimos obligados a resolver que los recibos de depósito sólo vinieron a poder del síndico quizás mediatamente, por la intervención de los demandados. Según decidió la corte inferior, y estamos de acuerdo con ella, el documento no suscrito por Sorbá no tenía valor obligatorio alguno.

Vamos un poco más lejos que la corte de distrito y resolvemos que los demandados no explicaron satisfactoriamente la existencia de este documento. Que con la existencia del documento sospechoso y su aceptación por los demandados, éstos estaban obligados a convencer a un juez, que actuaba en equidad, de que no habían participado en la fabricación del mismo. Tenían igualmente que justificar su conducta al radicar ante la corte de quiebras una reclamación exclusivamente a nombre de Marcelina Sorbá. Surge la deducción inevitable de que los demandados tenían la intención de apropiarse de estos $40,000 en beneficio propio. No puede darse crédito alguno a la alegación de los demandados de que tenían el propósito de dividirlos con los demandantes.

Aceptando como hechos la incautación de los recibos de depósito y el cambio de éstos por el documento, los demandados fueron culpables de actos fraudulentos que equivalían a una apropiación (*conversión*).

Conforme hemos visto había la probabilidad, de no haber la certeza, de que si los demandantes hubieran tenido conocimiento de la existencia de los $40,000 se hubieran puesto de

acuerdo con los demandados para cobrarlos inmediatamente. Esto queda ilustrado por otro hecho importante en el caso. Sorbá tenía $64,000 en el Banco Territorial que en los procedimientos de testamentaría fueron repartidos entre todos los herederos. Es casi incuestionable que se hubiera dado un paso similar en relación con los $40,000. La probabilidad o la certeza queda así pues fortalecida de que los demandados intencionalmente ocultaron y trataron de apropiarse de los $40,000.

En lo atinente a la ocultación, según indica la corte inferior, los demandados sostuvieron continuas relaciones de familia con los demandantes, y a pesar de las numerosas oportunidades para notificarles cuanto fuese necesario, dejaron en absoluto de dar a los demandantes indicio alguno respecto a la existencia de los $40,000 o de que se había presentado la reclamación en la corte federal a nombre de Marcelina Sorbá.

El artículo 1249 del Código Civil (edición de 1911) dispone:

"Para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato."

El principio aquí expresado puede ser aplicado aún más fuertemente a actos fraudulentos. Los demandados pusieron fuera del alcance de los demandantes el presentar reclamación contra Ochoa antes de ser llevados estos últimos a la quiebra. La actuación posterior de Marcelina Sorbá al reclamar en su totalidad los $40,000 lleva consigo la teoría de una apropiación por parte de los demandados.

Durante más de tres años los demandados cobraron los réditos de los $40,000 sin notificar en absoluto a los demandantes. Cuando alguien se apropia de los intereses, reclama el principal y como en el presente caso, oculta los hechos, surge necesariamente una apropiación (*conversion*).

La apropiación ha sido definida así:

"Apropiación es cualquier acto claro de dominio ilegalmente ejercido sobre los bienes muebles de otra persona en oposición o en pugna con los derechos de ésta, como por ejemplo, la incautación torticera de los muebles de un semejante o cualquier ejercicio ilegal o asunción de autoridad, personalmente o por mediación de un tercero, contra los bienes de otra persona, privándole de la posesión, permanentemente o por tiempo indefinido. El acto tiene que ser esencialmente torticero, pero no es esencial a una apropiación que baste para sostener una acción de daños y perjuicios (trover) que el demandado tenga absoluta tenencia (manucaption) de la propiedad, o que la use en beneficio propio, si ha ejercido dominio sobre ella con exclusión, en oposición o contrario a los derechos del dueño." 26 R. C. L. 1098, par. 3 y casos citados.

"Apropiación es la asunción y ejercicio no autorizados del derecho de propiedad sobre bienes muebles de otras personas, alterando su condición o excluyendo así los derechos del dueño. El daño legal, denominado 'apropiación', es cualquier acto no autorizado de dominio o de propiedad ejercido por una persona contra los bienes muebles de otra en pugna o en oposición con los derechos de ésta." 65 C. J. 11, par. 1 y casos citados.

Aun cuando los hechos de los casos citados en los textos anteriores no son tan íntimamente análogos que puedan ser citados directamente, ellos enuncian el principio. No tenemos duda, según ya hemos dicho, de que hubo una apropiación a tenor de la doctrina de dichos textos.

La conducta de los demandados que hemos caracterizado de apropiación (*conversion*) es meramente una de las formas de culpa descritas en el artículo 1802 de nuestro Código Civil (edición de 1930).

■ También notamos la sugestión de la apelada de que las actuaciones de Viñas y su esposa fueron las de un gestor oficioso y que las mismas están cubiertas por el artículo 1789 del Código Civil (edición de 1930), que lee así:

"El gestor oficioso debe desempeñar su encargo con toda la diligencia de un buen padre de familia e indemnizar los perjuicios que por su culpa o negligencia se irroguen al dueño de los bienes o negocios que gestione.

"Los tribunales, sin embargo, podrán moderar la importancia de la indemnización según las circunstancias del caso."

Toda vez que los demandados tomaron posesión de los fondos y asumieron el título de los mismos, estaban obligados a responder al igual que cualquier otro gestor oficioso, incluyendo especialmente el caso de que cualquier notificación a los demandantes con toda probabilidad les hubiese puesto en posición de recobrar el importe total de la sentencia.

No es necesario que prestemos atención especial a las tentativas de los demandados a limitar su reclamación a las sumas por ellos recibidas directamente, o de los síndicos en el procedimiento de quiebra.

Hemos eludido discutir la alegación o las admisiones contenidas en la contestación, o los errores uno por uno, por ser el resultado total tan claro.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Aldrey no intervino.