El MUNICIPIO DE CAYEY, representado por el Estado Libre Asociado, demandante y recurrente, *v.* ÁNGEL SOTO SANTIAGO, BENITA LÓPEZ SOTO Y LA SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos, demandados y recurridos.

*Número:* RE-89-400 *Resuelto:* 30 de junio de 1992

---

Jorge E. Pérez Díaz, Procurador General, y Sylvia Cancio Bigas, Procuradora General Auxiliar, abogados del Municipio recurrente; José Luis Ramos Hernández, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

I

Mediante una intervención especial realizada en el Municipio de Cayey (en adelante Municipio), la Oficina del Contralor de Puerto Rico (en adelante Oficina del Contralor) determinó que durante el período de 10 de abril de 1975 a 30 de marzo de 1976, el codemandado Ángel Soto Santiago se apropió ilegalmente de fondos públicos por la cantidad de $16,131.93 mientras se desempeñaba como Recaudador Auxiliar del Municipio de Cayey.[1]

Con arreglo a dicha intervención, el Pueblo de Puerto Rico presentó cargos criminales contra el demandado recurrido por delito contra fondos públicos (Art. 216 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4391), y el Tribunal de Distrito, Sala de Cayey, determinó causa probable para el arresto el 13 de noviembre de 1987. Luego, el 13 de enero de 1988, el magistrado suspendió la vista preliminar para determinar causa probable para acusar al demandado de acuerdo con lo dispuesto en la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El demandado recurrido fue objeto de evaluaciones por un psiquiatra del Estado en las que se determinó que efectivamente el de-

---

[1] Informe de Intervención M-79-3 de 27 de octubre de 1978. *Exhibit* VIII, págs. 25–41.

mandado se encontraba mentalmente incapacitado e improcesable. Posteriormente, el demandado recurrido fue declarado improcesable por razón de incapacidad mental, por lo que el proceso criminal llevado en su contra fue suspendido sin el tribunal poder dictar sentencia.

El 22 de junio de 1988, diez (10) años y siete (7) meses después de la fecha de publicación del informe del Contralor, el Municipio, representado por el Estado Libre Asociado de Puerto Rico, presentó una acción civil para recobrar los fondos públicos ilegalmente sustraídos.

En la demanda se alegó que tanto el Gobierno Municipal de Cayey como el Gobierno del Estado Libre Asociado, a través del Departamento de Justicia de Puerto Rico, habían realizado múltiples gestiones extrajudiciales para que la parte demandada recurrida restituyese el dinero alegadamente apropiado por dicha parte, pero que tales gestiones resultaron infructuosas. Por tal razón, el aquí recurrente solicitó al tribunal que ordenara a la parte demandada a restituir al Estado la suma de $14,418.18[2] que ésta adeudaba, más los intereses legales correspondientes y las costas del proceso.

Al contestar la demanda, los demandados recurridos negaron los hechos esenciales de ésta y esgrimieron la defensa de prescripción de la acción. Posteriormente, mediante moción de sentencia sumaria, solicitaron al tribunal que declarase la demanda sin lugar alegando que la acción incoada era una acción en daños y perjuicios por actos ilegales e ilícitos del demandado recurrido Ángel Santiago, mediante culpa o negligencia, por lo que era de aplicación el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Aduje-

---

[2] Se notará una diferencia entre la cifra señalada en el informe del Contralor y la cifra que finalmente se alegó en la demanda. Esta diferencia surge porque el Departamento de Justicia de Puerto Rico llevó a cabo una evaluación independiente del caso y reclamó en la demanda solamente la cantidad que podía probar a la luz de la prueba documental y testifical que obraba en su expediente.

ron que como el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, dispone en lo pertinente que prescriben por el transcurso de un (1) año "las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 [Art. 1802] de este título desde que lo supo el agraviado", la presente acción estaba prescrita.

A esta solicitud para que se dictase sentencia sumaria se opuso el demandante recurrente alegando que la acción incoada no era una acción para reclamar daños y perjuicios a favor del Municipio, sino una acción en cobro de dinero con el fin de que se ordenase al recurrido devolver la suma de dinero que éste se apropió y que pertenecía al erario municipal. El demandante recurrente alegó que siendo dicha acción análoga a la acción de cobro de dinero, también por analogía le aplicaba el término de prescripción de quince (15) años señalado en el Código Civil para las acciones sin término especial señalado. Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Finalmente, alegó que el término prescriptivo de quince (15) años para presentar la acción de epígrafe comenzaba el 27 de octubre de 1978, fecha cuando se hizo público el informe de la Oficina del Contralor.

El foro de instancia acogió la tesis de los recurridos, concluyendo que la acción instada era una de daños y perjuicios cuyo término prescriptivo de un (1) año ya había transcurrido, encontrándose por lo tanto prescrita. Desestimada la demanda bajo este fundamento, el Estado Libre Asociado comparece ante nos argumentando como único señalamiento de error que:

> El Honorable Tribunal de instancia erró al concluir que la presente acción civil estaba prescrita por constituir una acción en daños y perjuicios bajo el Artículo 1802, supra, y no una acción civil personal para recobrar unos fondos públicos ilícitamente apropiados por el demandado-recurrido que es impres-

criptible o en la alternativa, que prescribe a los 15 años. Informe del Procurador General, pág. 6.

Expedimos el auto de revisión solicitado y estando en condiciones de resolver el mismo, revocamos.

## II

■■■ La acción particular que nos ocupa fue presentada por el Secretario de Justicia conforme a la Ley Núm. 17 de 8 de mayo de 1973, que le confiere autoridad para tramitar acciones civiles o criminales que surjan como resultado de alguna intervención del Contralor. El propósito de esta ley es ayudar a hacer valer las determinaciones del Contralor y así salvaguardar la honestidad administrativa y la legalidad en el manejo de fondos públicos. La Ley Núm. 17, *supra*, sin embargo, no fija términos a las acciones que prevé, y ya hemos resuelto que las acciones que se tramiten a tenor con la misma "tendrán las limitaciones (términos prescriptivos, etc.) de la acción escogida para encausar a los funcionarios municipales quienes ... hayan incurrido en violaciones a la ley en el manejo ... de fondos públicos". *E.L.A. v. Asoc. Empleados Obras Pub. Mun.*, 126 D.P.R. 320, 331 (1990).

■ Por lo tanto, tenemos ante nos la cuestión de si la presente acción para recobrar los fondos públicos ilegalmente sustraídos surge del Art. 1802 del Código Civil, *supra*, como alega el recurrido y como resolvió el tribunal de instancia, o si en cambio se trata de una acción análoga a la acción personal en cobro de dinero, como alega el Estado. De esta determinación depende la cuestión de prescripción que, como reiteradamente hemos dicho, "es materia sustantiva y no procedimental, regida por los principios que informan el Derecho Civil. *Febo Ortega v. Tribunal Superior*, 102 D.P.R. 405, 407 (1974)". (Escolio

omitido.) *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 742–743 (1981). .

■ La cuestión ante nos, aunque sencilla en su formulación conceptual, está revestida de una seria dificultad ya que nuestro ordenamiento jurídico no establece directamente ninguna causa de acción civil particular para la restitución de fondos públicos obtenidos ilícitamente.[3] Para poder decidir cuál término de prescripción aplica debemos identificar antes de dónde surge la causa de acción específica de restitución, pero resulta que no hay tal causa de acción expresamente legislada. Ello nos obliga a explorar judicialmente las fuentes posibles para atender esta laguna legislativa, conforme al mandato del Art. 7 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 7.[4]

## III

■ Podemos afirmar con certeza que la acción en este caso no surge bajo el Art. 1802 del Código Civil, *supra*, y, por lo tanto, no aplica el término prescriptivo de un (1) año.

El tribunal de instancia falló al determinar que la causa de acción incoada por el Municipio para recobrar los fondos

---

[3] El Código Penal dispone la restitución como pena accesoria en casos de apropiación ilegal agravada (Art. 166 (33 L.P.R.A. sec. 4272)), pero ello no es de aplicación aquí en vista de que el demandado no sólo no ha sido convicto de delito alguno por razón de los hechos de este caso, sino que además ni siquiera fue acusado de dicho delito. El demandado fue acusado por el delito contra fondos públicos (Art. 216 (a), 33 L.P.R.A. sec. 4391a), el cual conlleva pena de reclusión hasta un máximo de diez (10) años, pero no dispone la restitución como pena.

[4] De los autos consta que no existía un contrato formal entre el demandado y el Municipio de Cayey (en adelante Municipio). Sólo había un formulario que acreditaba que el Municipio le había extendido un nombramiento al demandado para el puesto de Recaudador Auxiliar. Quizás por esta razón la parte demandante no presentó expresamente una acción por incumplimiento de contrato. No tenía a su favor una cláusula contractual que expresamente fijara el deber de restituir los fondos recaudados cuando éstos se habían retenido para uso propio. Claro está, ello no significa que no se pudiera inferir la existencia de tal deber contractual, en virtud de lo dispuesto en el Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375. De haberse hecho tal alegación, sin embargo, hubiese sido necesario realizar una exploración de fuentes jurídicas similar a la que hacemos en esta opinión.

públicos apropiados ilegalmente por el demandado era una en daños y perjuicios bajo el Art. 1802, *supra*. Al así resolver se fundamentó erróneamente en el caso de *Santiago Nieves v. A.C.A.A.*, 119 D.P.R. 711 (1987), donde se distingue la culpa extracontractual a que se refiere el Art. 1802, *supra*, de la que nace por la voluntad de las partes. Las alegaciones de la demanda presentada en este caso demuestran claramente que lo único que solicita el Municipio es que la parte demandada devuelva al Estado una suma de dinero que el codemandado Soto Santiago venía obligado a depositar en el Municipio, de conformidad con las funciones inherentes a su cargo, y que alegadamente no depositó. La demanda presentada por el Estado Libre Asociado no contiene alegación alguna respecto a la indemnización de daños o a la reparación de perjuicios. En los hechos de este caso pudo haberse considerado como daño el costo administrativo interno causado por la actuación ilegal del codemandado, el costo de las investigaciones y auditorías relativas a la contabilidad del Municipio, así como "[el] perjuicio patrimonial [que causa] el dar a los caudales del Estado un destino diferente del que tenía asignado, que obliga a proveer con otros medios económicos no previstos a las necesidades que aquellos caudales habían de cubrir o dejar desatendidos los servicios públicos para los que habían sido presupuestados". Véase J.M. Rodríguez Devesa, *Derecho Penal español: Parte Especial*, 9na ed., Madrid, Artes Gráficas Carasa, 1983, pág. 1127. Pero ninguna de estas alegaciones se hicieron. Sólo se pretende recobrar unos fondos que alegadamente el codemandado se apropió ilegalmente. No se ha incoado, pues, ni se está ejercitando una acción de daños.([5])

Nuestra conclusión de que la acción en este caso no

---

. ([5]) Hemos establecido que la verdadera naturaleza de la acción que se ejercita es determinada por las alegaciones contenidas en la demanda y no por el título consignado en ésta. Véase *Muñoz v. Pardo*, 68 D.P.R. 612 (1948).

surge propiamente bajo el Art. 1802 del Código Civil, *supra*, descansa además en una fundamental consideración sobre la *naturaleza* de la responsabilidad que es exigible bajo ese artículo. Como bien señala Puig Brutau, la responsabilidad extracontractual o aquiliana, que es de la que trata nuestro Art. 1802, *supra*, "deriva del daño producido a otra persona, *sin que exista una previa relación jurídica convenida entre el autor del daño y el perjudicado*". (Énfasis suplido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. II, Vol. 3, pág 77. Santos Briz, citando al Tribunal Supremo de España, explica lo mismo señalando que "[la] culpa extracontractual o aquiliana ... representa un daño causado *con independencia de cualquier relación jurídica precedente entre las partes* ...". (Énfasis suplido.) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Ed. Edersa, T. XXIV, págs. 134–135 (1984). Pantaleón, citando siete (7) otros distinguidos comentaristas, indica igualmente que el supuesto de hecho de las normas de responsabilidad extracontractual no incluye "el incumplimiento dañoso de una obligación o de un deber accesorio, integrante de una relación jurídica preexistente entre las partes ...". F. Pantaleón, *Comentario Del Código Civil*, T. II. pág. 1977 (1991). Nuestra propia jurisprudencia ha reiterado esta fundamental consideración al apuntar en varias ocasiones que el radio de acción del Art. 1802, *supra*, "está limitado a la culpa o negligencia *no relacionada con una obligación anterior* ...". (Énfasis suplido.) *Arroyo v. Caldas*, 68 D.P.R. 689, 692 (1948). Véanse, también: *Lugo Falcón v. E.M. Amy & Sons, Inc.*, 87 D.P.R. 556 (1963), y *Mejías v. López*, 51 D.P.R. 21 (1937).

En el caso ante nos, los hechos que se le imputan al demandado no son independientes de la relación jurídica preexistente entre el demandado y el demandante. El recurrido Ángel Soto Santiago estaba empleado como recaudador del Municipio. Como parte de esa relación de em-

pleo, tenía el deber de entregarle al Municipio los fondos recaudados en el desempeño de sus funciones. Es precisamente el incumplimiento alegado de ese deber lo que da lugar a la acción presentada por el Municipio. La restitución que interesa el demandante dimana de la previa relación jurídica con el demandado. El deber de éste de devolver los fondos que se le reclaman está íntimamente vinculado con la relación jurídica precedente entre el demandado y el demandante, particularmente con la obligación anterior que aquél tenía de entregarle sus recaudos al demandante. La acción de cobro de dinero que ha incoado el Municipio, pues, no puede considerarse como una acción bajo el Art. 1802, *supra*, porque carece del elemento fundamental definitivo de esa causa de acción.

En apoyo de esta conclusión, queremos hacer referencia también a una notable sentencia del Tribunal Supremo de España en un caso donde el Estado presentó una acción de restitución contra ciertos demandados que se habían apropiado de bienes del Estado. Los demandados alegaron que la acción estaba prescrita por considerar que se trataba de daños y perjuicios, pero el Tribunal Supremo español, el 10 marzo de 1958, rechazó que fuera de aplicación "la prescripción de la acción por las obligaciones derivadas de la culpa o negligencia de que se trata en el artículo 1902 [Art. 1802 nuestro]", y declaró que la acción de restitución incoada por el Estado "tiene sustantividad propia frente a la indemnización de daños y perjuicios, de la que la independizan múltiples notas diferenciales que la doctrina científica ha señalado ...". (Énfasis suprimido.) S. de 10 de marzo de 1958, Núm. 1068, XXV (Vol. II) Repertorio de Jurisprudencia 686. El Tribunal Supremo español señaló que en ese caso ocupaba "primer plano de fuente jurídica el principio de que a nadie es lícito enriquecerse a costa de otro" resolviendo así a favor del Estado. (Énfasis suprimido.) Íd., págs. 686–687.

En resumen, pues, no puede haber dudas que conforme

a la doctrina civilista, a los pronunciamientos del Tribunal Supremo de España que tienen gran valor persuasivo en nuestra jurisdicción cuando interpretamos el Código Civil, y de acuerdo con nuestra propia jurisprudencia no puede considerarse que la acción de cobro de dinero incoada por el demandante en este caso es una acción de daños y perjuicios que surge del Art. 1802, *supra*.

## IV

Se podría pensar que la situación de hechos que nos concierne se rige fundamentalmente por lo establecido en el Art. 393 del Código Civil, 31 L.P.R.A. sec. 1479. El primer párrafo de ese artículo dispone lo siguiente:

> La posesión de los bienes muebles adquiridos de buena fe equivale al título. Sin embargo, el que hubiese perdido una cosa mueble o *hubiese sido privado de ella ilegalmente, podrá reivindicarla de quien la posea.* (Énfasis suplido.) 31 L.P.R.A. sec. 1479.

De este artículo nace la acción reivindicatoria para recuperar bienes muebles apropiados ilegalmente. Sin embargo, dicha acción real no procede en el caso de autos.

El dinero es un bien fungible y genérico. Estas características implican que el dinero no puede ser usado sin consumirse y que tampoco puede ser específicamente identificado. El dinero, al no poder ser identificado, no puede ser objeto de una acción *real* de recuperación de la cosa misma, la recuperación se refiere siempre al valor y adquiere naturaleza *personal*. J.A. Álvarez Caperochipi, *El Enriquecimiento sin causa*, Madrid, Villena, Artes Gráficas, 1979, pág. 121, nos señala el fenómeno que ocurre en los casos de bienes fungibles:

> ... cualquier tenencia de una cosa ajena fungible produce su efectiva apropiación; la razón de ello es que de ninguna forma

> puede identificarse la cosa requisito previo de todas las accio-
> nes de naturaleza real. Así pues, para recuperar cosa fungible
> retenidas por un tercero, sólo puede accionarse a través de una
> acción personal, *la condictio*, que persigue el provecho produ-
> cido de el patrimonio ajeno y no la cosa en sí misma. (Énfasis en
> el original y énfasis suprimido.)

Dada la naturaleza de las cosas fungibles, éstas no pue-
den ser usadas sin consumirse. Cuando dicho consumo es
de cosa ajena sin título surge la obligación de restituir un
bien de la misma especie o el provecho percibido de dicho
consumo. En estas circunstancias no procede la acción rei-
vindicatoria de carácter real que aparece en el Art. 393,
*supra*.

## V

Los demandantes recurrentes alegan que la acción
para recobrar los fondos ilegalmente apropiados por el de-
mandado es *análoga* a la acción de cobro de dinero. Clara-
mente tienen razón en cuanto a que en este caso procede la
aplicación analógica de normas. Ya hemos dicho que en el
derecho civil, como en muchos otros sistemas jurídicos, se
reconoce el problema del silencio de la ley y que los casos
no previstos por ley se regularán por la norma aplicable a
los casos análogos. Véanse: *Almodóvar v. Méndez Román*,
125 D.P.R. 218 (1990); *Olmo v. Young & Rubicam of P.R.,
Inc.*, supra; *Lozada Torres v. Collazo*, 111 D.P.R. 702
(1981).

Una situación análoga a la de los hechos en cuestión es
la que surge del contrato de mandato cuando un agente o
mandatario recibe fondos para un propósito determinado,
pero los usa para fines propios. Apunta Manresa que "[e]l
mandatario que recibe una cantidad para el mandante, y
en lugar de enviarla la retiene en su poder, y la emplea en
la satisfacción de necesidades propias, sin estar para ello
debidamente autorizado, realiza un verdadero abuso de

confianza ...". J.M. Manresa y Navarro, *Comentarios al Código Civil español*, Madrid, Ed. Reus, 1931, T. XI, pág. 454. El agente que así se ha enriquecido no tiene derecho a retener en su poder, contra la voluntad del mandante, los dineros obtenidos. Y ya hemos resuelto que las acciones para reclamar la devolución de tales fondos dados en custodia se rigen por el Art. 1864 del Código Civil y prescriben a los quince (15) años. *McCormick v. González Martínez*, 49 D.P.R. 473 (1936); *Fernández v. Laloma*, 56 D.P.R. 367 (1940). Aplica aquí perfectamente lo que se dijo en *McCormick v. González*, supra, pág. 488: "en el presente caso no ... se reclama compensación alguna por daños y perjuicios. La parte apelante se limita a demandar que se le entreguen los beneficios derivados del uso indebido de su propio dinero. La acción ejercitada debe regularse por el artículo 1864 del Código Civil, según el cual prescriben a los quince años las acciones ...".

Más generalmente, en su fondo, tratamos aquí con una situación que permite invocar el principio de derecho de que nadie debe enriquecerse injustamente a costa de otro.[6] Hoy día, el enriquecimiento injusto ... [es un] principio general de Derecho, [que] forma parte de la tradición jurídica de todos [los] ordenamientos de raíz romana ... expresamente recogido en Las Partidas, [que] se repite unánimemente por todas las jurisprudencias contemporáneas." (Escolios omitidos.) Álvarez Caperochipi, *op. cit.*, pág. 14. En la doctrina española contemporánea el enriquecimiento injusto es una regla de derecho basada en la equidad que permea todo el ordenamiento jurídico. Véanse: A. Colin y H. Capitant, *Curso Elemental*

---

[6] Reiteramos que por estar ante nos una situación en la cual no existe disposición legislativa expresa que directamente resuelva la cuestión, es nuestro deber resolver la controversia planteada a la luz del precepto contenido en el segundo párrafo del Art. 7 del Código Civil que dispone "[c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a *equidad*, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho ...". 31 L.P.R.A. sec. 7.

318

*de Derecho Civil*, Madrid, Instituto Editorial Reus, 1943, pág. 946; A. De Rovira Mola, *El Enriquecimiento Injusto*, en Nueva Enciclopedia Jurídica, Barcelona, Ed. Francisco Seix, 1956, T. VII, págs. 570–590; Albaladejo, *op. cit.*, 1959, pág. 757; Puig Brutau, *op. cit.*, págs. 43–74; A. Hernández-Gil, *Derecho de Obligaciones*, Madrid, Ed. Bosch, 1960, Vol. 1, pág. 262 y ss; L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1972, Vol. 1, págs. 73–81. Y, como hemos visto, se ha extendido también su aplicación a la esfera del derecho público, más allá de las relaciones entre particulares. La Sentencia de 10 de marzo de 1958 mencionada antes no es la única vez que el Tribunal Supremo de España ha acudido al enriquecimiento injusto en favor del Estado. También lo ha hecho en sentencias que resuelven recursos contenciosos-administrativos relativos a devolución de ingresos indebidos. Albaladejo, *op. cit.*, 1984, págs. 33–34.

 Nuestro Código Civil, al igual que el Código Civil español del cual proviene, no contiene disposición específica ni directa sobre el enriquecimiento injusto. Sin embargo, en Puerto Rico la doctrina de enriquecimiento injusto se encuentra subsumida en la figura de los cuasicontratos y en otras disposiciones de nuestro Código Civil. El profesor Velázquez, al comentar sobre esta materia, señala:

Uno de los principios fundamentales que informan el Código Civil es, en efecto, que nadie debe enriquecerse injustamente en perjuicio de otro.

Tal principio no se halla consagrado expresamente en el Código Civil. Pero hace numerosas aplicaciones del mismo. Véanse, en efecto, los artículos 296, 297, 300, 301 (31 L.P.R.A. secs. 1163, 1164, 1167, 1168), relativos a la accesión; 381, 382, 383 y 384 (31 L.P.R.A. secs. 1467 a 1470), relativos a la posesión; 1117 (31 L.P.R.A. sec. 3167), relativo al pago; 1304 (31 L.P.R.A. sec. 3644), relativo a los bienes gananciales; 1407 (31 L.P.R.A: sec. 3912), relativo al retracto; 1679 (31 L.P.R.A. sec.

4681), relativo al depósito; 1766 (31 L.P.R.A. sec. 5025), relativo a la prenda; etc. Y, sobre todo, véanse los artículos 1795 a 1801 (31 L.P.R.A. secs. 5221 a 5127), relativos al cobro de lo indebido. Ante la multiplicidad de estos textos especiales es forzoso admitir que el Código Civil encierra un conjunto de disposiciones que demuestran que el legislador ha reconocido de un modo general la existencia del principio referido. Además, conforme dice Planiol, dicho principio se impone como una regla necesaria de equidad, siendo "una de esas raras reglas de derecho natural que dominan todas las leyes, aún cuando el legislador no se haya tomado especialmente el cuidado de formularlas". (Énfasis suprimido y escolio omitido.) G. Velázquez, *Las obligaciones según el Derecho puertorriqueño*, Santurce, Equity de P.R., 1964, pág. 133.

▉ Aunque tradicionalmente la doctrina de enriquecimiento injusto se discutía en el contexto de los contratos y cuasicontratos, ya se le considera como un principio general que opera en todo el ámbito del Derecho. Nuestra jurisprudencia ha reconocido la existencia de otras situaciones de las cuales puede derivarse una obligación exigible por virtud de este principio. Véanse: *Moring-lane & Lledó v. Skerret*, 44 D.P.R. 874 (1933); *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682 (1987); *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697 (1983); *Silva v. Comisión Industrial*, 91 D.P.R. 891 (1965); *Compañía Popular v. Corte*, 63 D.P.R. 121 (1944); *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817 (1988); *A.E.E. y A.A.A. v. P.N.P.*, 128 D.P.R. 294 (1991).

Según Puig Brutau, "[d]e enriquecimiento injusto se habla propiamente cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente". Puig Brutau, *op. cit.*, pág. 44. El problema central que atiende esta doctrina es que se haya verificado una atribución "sin causa". Esta atribución es al mismo tiempo la fuente de dos (2) fenómenos paralelos: el enriquecimiento de un patrimonio y el correspondiente empobrecimiento de otro. "Para restablecer el equilibrio ... entre

los dos patrimonios hace falta una acción o pretensión restitutoria que verifique otro desplazamiento de valor en sentido inverso." R. Núñez Lagos, *El enriquecimiento sin causa en el Derecho español*, Madrid, Ed. Reus, 1934, pág. 6. El enriquecimiento sin causa es el fundamento de una acción de restitución. La prohibición de enriquecimiento sin causa a costa de otro implica que el que sin causa legítima se enriquece a costa de otro, está obligado a la restitución. Núñez Lagos, *op. cit.*, págs. 5–6, nos señala:

> … el centro de gravedad de la teoría del enriquecimiento sin causa se encuentra en el hecho de que, de conformidad con el ordenamiento jurídico formal, se verifican desplazamientos patrimoniales, que, por carecer de causa, engendran un derecho a la restitución.

En *Ortiz Andújar v. E.L.A.*, supra, indicamos los requisitos para la aplicación de la doctrina de enriquecimiento, a saber: (1) la existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3) una conexión entre ese enriquecimiento y el empobrecimiento, y (4) la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.

Si luego que se vea el caso en su fondo se determina judicialmente que están presentes estos cuatro (4) requisitos, entonces procedería la acción por enriquecimiento injusto.

Queremos enfatizar que no encontramos en nuestro ordenamiento jurídico ningún precepto legal que sirva de base para impedir en el caso de marras la aplicación de la doctrina de enriquecimiento injusto. Al contrario, a la luz de nuestro ordenamiento la reclamación del Municipio, de ser ciertos los hechos alegados, no sólo es legítima, sino que está revestida de gran interés público y fundamentada en la propia Constitución del Estado Libre Asociado de Puerto Rico.

El Art. VI, Sec. 9 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1982, pág. 369, provee:

Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley.

Por otro lado, nuestro Código Penal en el Art. 216 (33 L.P.R.A. sec. 4391), titulado "Delitos contra fondos públicos", prohíbe en su inciso *a* el que un funcionario o empleado público o toda persona encargada de recibir, guardar, traspasar o desembolsar fondos públicos sin autoridad legal se los apropie en todo o en parte, para beneficio particular o el de otra persona. Se trata de un delito que conlleva una pena de cárcel severa y que tiene la característica de ser imprescriptible. Véase Art. 78 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3412.

Con el fin de promover y preservar la integridad de los funcionarios del Gobierno del Estado Libre Asociado nuestra legislatura también ha creado leyes especiales tales como la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985, en cuya exposición de motivos se dijo que:

Hay ocasiones en que, por desventura, surgen unas acciones improcedentes por parte de algunos funcionarios que, al incurrir en claras faltas a las normas de ética, ponen en riesgo la estabilidad del soporte moral del Estado. Es intolerable que existan funcionarios públicos en representación de la administración del Gobierno que puedan lucrarse del patrimonio del pueblo. Los conflictos de intereses, especialmente financieros, en abierta violación a las leyes son también intolerables. Exposición de Motivos de la Ley Núm. 12 de 24 de julio de 1985, Leyes de Puerto Rico, pág. 709.

Este Tribunal también ha censurado las actuaciones indebidas de funcionarios públicos que se lucran de los fondos del Estado. En opinión concurrente en *A.E.E. y A.A.A.*

*v. P.N.P.*, supra, págs. 294–295, el Hon. Juez Negrón García expresó lo siguiente:

> La corrupción y el desembolso indebido o ilegal de fondos públicos —en sus formas múltiples, a veces burdas y otras sofisticadas— son actos incompatibles con el sistema de gobierno democrático consagrado en nuestra Constitución y apuntalado en el respeto a la dignidad humana y los dineros del pueblo como único soberano. No importa las modalidades que adopten ni la jerarquía del funcionario involucrado, las mismas son intolerables. En última instancia, quien verdaderamente se perjudica, no sólo en lo económico sino en lo moral, es la ciudadanía en general independientemente de su afiliación política. Es, pues, obligación de los tribunales reivindicar esos valores fundamentales. (Énfasis suprimido.)

## VI

 Resumiendo lo que hemos señalado anteriormente, la acción estrictamente para recobrar fondos públicos obtenidos ilícitamente no surge bajo el Art. 1802 del Código Civil, *supra.* Tampoco procede la acción real de reivindicación que provee el Art. 393 del Código Civil, *supra.* Se trata más bien de una acción de naturaleza *personal*, como la que tiene el principal que reclama la devolución de los fondos que un agente ha retenido sin autorización; y, más genéricamente, como la que procede para vindicar un enriquecimiento sin causa.

 Recientemente, en *E.L.A. v. Asoc. Empleados Obras Pub. Mun.,* supra, tuvimos la ocasión de considerar una acción instada por el Estado para recobrar un alegado *desembolso* ilegal de fondos públicos. Aunque finalmente la acción no prevaleció porque determinamos que el desembolso en cuestión no era ilegal, sí resolvimos que para fines de prescripción la acción aludida era una personal de cobro de dinero. Evidentemente, dicha acción es muy parecida, análoga, a la que ahora tenemos ante nos. Siendo la acción que nos ocupa una acción personal sin término de prescrip-

ción señalado en el Código Civil u otra ley especial, y siendo análoga a la acción en cobro de dinero, debe aplicarse el término prescriptivo de quince (15) años que dispone el Art. 1864 del Código Civil, *supra*, para las acciones personales que no tengan señalado término especial de prescripción.

Al deducir este plazo de prescripción hemos considerado los intereses en conflicto de las partes involucradas en la controversia. Por un lado, se encuentra el interés del Estado en recobrar los fondos públicos que alegadamente le fueran ilegalmente sustraídos; y del otro lado, se encuentra el interés de los demandados de que no prospere una reclamación por actos ilícitos ocurridos hace alrededor de catorce (14) años.

El justo balance de estos intereses en el caso de autos nos lleva a concluir que debe prevalecer el derecho del Estado para reclamar su acción ante el derecho de los demandados a no estar sujetos indefinidamente a posibles reclamaciones en su contra. Como anteriormente señalamos, la apropiación ilegal de fondos públicos constituye un delito bajo nuestro Código Penal vigente. Dada la naturaleza imprescriptible de la acción penal derivada de dicho delito, si el demandado supera su actual condición mental, el Estado puede en cualquier momento en la vida de éste promover un proceso penal en su contra.

Aunque sobre este fundamento posiblemente pudiéramos declarar imprescriptible la acción del Estado para recobrar fondos ilegalmente apropiados, estimamos que el período de quince (15) años dispuesto en el Art. 1864, *supra*, le brinda un término razonable al Estado dentro del cual pueda vindicar su obligación de recuperar los fondos públicos. El término de quince (15) años es lo suficientemente amplio para que el Estado realice todas aquellas gestiones necesarias para incoar un pleito civil de esta naturaleza, a saber, investigaciones de la Oficina del Contra-

lor, investigaciones del Departamento de Justicia de Puerto Rico, auditorías internas y otras.

Por otro lado, aunque en *Olmo v. Young & Rubicam of P.R., Inc.*, supra, habíamos hecho referencia a la tendencia moderna de acortar los términos de prescripción de las acciones, entendemos que existen razones de orden público que exigen que el término de prescripción para instar una acción para recobrar fondos públicos ilegalmente apropiados deba ser mayor de un (1) año, de suerte que se le permita al Estado recobrar real y efectivamente dichos fondos que pertenecen al erario. Resolver lo contrario tendría el efecto de frustrar la política pública encarnada en la propia Constitución de Puerto Rico y tendría el efecto de coartar o debilitar el mecanismo que constitucionalmente y por mandato de ley se estableció con el propósito de controlar el uso ilegal de fondos públicos. Coincidimos con el argumento de la parte recurrente a los efectos de que debe considerarse como punto de partida para ejercitar la presente acción la fecha en que concluyó la intervención por parte de la Oficina del Contralor y se hizo público su informe, es decir el 27 de octubre de 1978. Presentada la demanda el 22 de junio de 1988, antes de expirar el término prescriptivo de quince (15) años, declaramos que la acción personal no estaba prescrita.

Por los fundamentos antes expuestos, *se revoca la sentencia del Tribunal Superior y se devuelve el caso para que continúen los procedimientos conforme a esta opinión.*

El Juez Asociado Señor Negrón García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disintió mediante opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Re-
bollo López.

No obstante lo difícil que se hace entenderlo —y acep-
tarlo, desde un punto de vista jurídico— un análisis dete-
nido de la opinión mayoritaria emitida demuestra que la
decisión del Tribunal de revocar la sentencia sumaria dic-
tada por el Tribunal Superior de Puerto Rico, Sala de Gua-
yama, *descansa en el sorprendente y tortuoso razonamiento
de que* como nuestro ordenamiento jurídico, *alegadamente*,
no contiene un precepto legal específico que le permita al
Estado recobrar fondos públicos ilegalmente apropiados
por un empleado público deshonesto, con relación a ello se
debe recurrir a la acción "genérica" provista por la doctrina
del enriquecimiento injusto, acción *sui generis* a la cual
—conforme resuelve el Tribunal— procede aplicarle el tér-
mino prescriptivo de quince (15) años que establece el Art.
1864 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5294.

Dicho razonamiento resulta ser, *por lo erróneo*, alta-
mente sorprendente. Es verdaderamente inexplicable que
este Tribunal, *con el aparente propósito de subsanar una
actuación a todas luces negligente de la Rama Ejecutiva*, le
dé la espalda a, y/o varíe, doctrinas firmemente estableci-
das en nuestra jurisdicción. No le corresponde a este Tri-
bunal "sacarle las castañas del fuego" al Estado. Nuestra
función se limita a velar porque se haga cumplida justicia,
*independientemente de quiénes son los litigantes en el
pleito ante nuestra consideración*.

I

Los hechos, pertinentes y materiales, del caso son sor-
prendentemente sencillos. El *27 de octubre de 1978*, la Ofi-
cina del Contralor de Puerto Rico hizo público un informe

relativo a una intervención que había llevado a cabo en el Municipio de Cayey. Del mismo surgía que el codemandado Ángel Soto Santiago, quien era empleado del referido municipio, se había apropiado ilegalmente de fondos públicos pertenecientes al Municipio de Cayey durante el período de 10 de abril de 1975 a 30 de marzo de 1976.

El Ministerio Público radicó denuncia ante el foro judicial contra Soto Santiago por una supuesta infracción al Art. 216 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4391. El proceso, en sus méritos, nunca pudo ser celebrado; ello debido a que Soto Santiago fue declarado "mentalmente incapacitado" para ser sometido a juicio.

El *22 de junio de 1988* el Secretario de Justicia de Puerto Rico —en representación del Municipio de Cayey y actuando al amparo de las disposiciones de la Ley Núm. 17 de 8 de mayo de 1973— radicó ante el Tribunal Superior de Puerto Rico, Sala de Guayama, una demanda "sobre: cobro de dinero" contra Ángel Soto Santiago, su esposa Benita López Soto, y la sociedad legal de gananciales compuesta por ambos. En lo pertinente, se alegó en dicha demanda que "el demandado Ángel Soto Santiago se apropió ilegalmente de fondos públicos por un monto de $14,418.18 mientras se desempeñaba como recaudador" del Municipio de Cayey. *Esto es, la base u origen de la acción sobre cobro de dinero radicada lo es, precisamente, el acto delictivo alegadamente cometido por el codemandado Soto Santiago.*[1]

Luego de contestada la demanda, la parte demandada radicó una solicitud de sentencia sumaria. En la misma alegó, *en síntesis y en lo pertinente*, que la acción radicada estaba prescrita por razón de que a la misma le era de aplicación el término prescriptivo de un (1) año que esta-

---

[1] Procede que se enfatice y aclare que el Secretario de Justicia de Puerto Rico radicó —en adición a, y conjuntamente con, la demanda— una moción en la cual solicitaba del tribunal de instancia que se le nombrara un "tutor y/o defensor judicial" al codemandado Soto Santiago.

blece el Art. 1869 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5298. No obstante la oposición de la parte demandante, el tribunal de instancia declaró con lugar la moción de sentencia sumaria radicada. Acudió, en revisión, el Municipio de Cayey ante este Tribunal imputándole error al referido foro al así resolver.

En el día de hoy, como expresáramos al comienzo, el Tribunal revoca la referida sentencia. Disentimos; veamos por qué.

## II

El *obstáculo jurídico infranqueable* con que se confronta la opinión mayoritaria radica en el hecho de que la doctrina sobre enriquecimiento injusto *es una en equidad* que *únicamente puede ser invocada* " 'cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente' ". *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817, 822 (1988). En otras palabras, la acción civil que hoy *por fiat judicial*, errónea e innecesariamente, *crea o fabrica* la Mayoría —una, en las propias palabras del Tribunal, "mas bien de ... naturaleza personal ... y, más genéricamente, como la que procede para vindicar un enriquecimiento sin causa" —(énfasis suprimido) opinión mayoritaria, pág. 322— *no* procede por cuanto para que la misma tenga eficacia resulta necesario que el Estado " 'no tenga ninguna otra acción para obtener resarcimiento' ". *El Toro Electric Corp. v. Zayas*, 106 D.P.R. 98, 102 (1977).

Procede, en consecuencia, que nos cuestionemos si nuestro ordenamiento jurídico contiene, o le provee al Estado, un precepto, o vehículo, estatutario que le permita recobrar fondos públicos ilegalmente apropiados por un empleado público deshonesto. La contestación en la afirmativa "resalta a la vista y hiere la retina". *In re Roldán González*, 113 D.P.R. 238, 242 (1982). Nos explicamos.

## III

Establece el Art. 1802 del vigente Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, que:

El que por acción u omisión causa daño a otro, interviniendo *culpa o negligencia*, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. (Énfasis suplido.)

Reiteradamente hemos expresado que "[e]l concepto de culpa del Art. 1802 del Código Civil —ed. 1930— es *infinitamente abarcador*, tan amplio y abarcador como suele ser la conducta humana". (Énfasis suplido.) *Reyes v. Sucn. Sánchez Soto*, 98 D.P.R. 305, 310 (1970). Según expresamos en el citado caso de *Reyes v. Sucn. Sánchez Soto*, pág. 313, "[e]l concepto de la culpa incluye todo tipo de transgresión humana tanto en el orden legal como en el orden moral, y ... lleva en sí el presupuesto de la ilicitud y la antijuridicidad —lo contrario a Derecho". *Reyes v. Sucn. Sánchez Soto*, ante. "Es ilícita aquella conducta que esté en contra del mínimo sobreentendido del orden de la vida." *Ramos v. Carlo*, 85 D.P.R. 353, 359 (1962).

Por otro lado, es norma firmemente establecida por este Tribunal que el concepto de culpa al cual se alude en el Art. 1802 del Código Civil, ante, *incluye* actos delictivos según definidos en el vigente Código Penal. En específico, y en relación con las "obligaciones civiles nacidas de los delitos o faltas" de que habla el Art. 1045 del Código Civil, 31 L.P.R.A. sec. 2995, *hemos resuelto que a dichas obligaciones civiles nacidas de delitos le aplican las disposiciones del citado Art. 1802.* A esos efectos, véanse: *Guzmán v. Vidal*, 19 D.P.R. 841 (1913); *Reyes v. Aponte*, 60 D.P.R. 890 (1942); H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, San Juan, Pubs. J.T.S., 1986, Vol. I, Cap. 1, pág. 57.

La opinión mayoritaria descansa en la *premisa errónea* de que al existir una relación jurídica previa (patrono-empleado) no es de aplicación el Art. 1802, ante. Al así actuar se apoya en el principio general de que la responsabilidad extracontractual entra en juego cuando la persona que causa el daño ilícito no está vinculada por un contrato. Ciertamente esta situación ocurre solamente cuando nos enfrentamos a la llamada responsabilidad aquiliana pura.

No obstante, en esta jurisdicción, al igual que en España, existen otras modalidades en que sí procede la acción ex delicto. A esos efectos, este Tribunal ha resuelto en varias ocasiones que aunque exista una relación contractual *o una relación jurídica previa,* la acción en daños y perjuicios procede cuando la misma surge del incumplimiento de unas obligaciones y unos deberes impuestos por la ley que son necesarios a la convivencia social. *Ocasio Juarbe v. Eastern Airlines, Inc.,* 125 D.P.R. 410 (1990); *Santiago Nieves v. A.C.A.A.,* 119 D.P.R. 711 (1987); *Colón Prieto v. Géigel,* 115 D.P.R. 232 (1984); *Chévere v. Cátala,* 115 D.P.R. 432 (1984); *Mejías v. López,* 51 D.P.R. 21 (1937), entre otros. Brau del Toro, *op. cit.,* págs. 42–47. En adición, somos del criterio que el hecho de que exista un contrato o una relación jurídica previa no excluye automáticamente la responsabilidad extracontractual. Véase *Ramos v. Orientalist Rattan Furnt., Inc.,* 130 D.P.R. 712 (1992).

En el caso particular ante nuestra consideración, como certeramente señala la parte demandada recurrida, el incumplimiento por parte de Soto Santiago de su deber de entregarle al Municipio de Cayey los fondos por él recaudados *constituye el quebrantamiento de un deber impuesto por la ley y no de una obligación contractual.* Véase *Ocasio Juarbe v. Eastern Airlines, Inc.,* ante.(²) Los hechos por los

---

(²) En *Ocasio Juarbe v. Eastern Airlines, Inc.,* 125 D.P.R. 410, 418 (1990), expresamos que las "acciones en daños y perjuicios proceden cuando ha habido una violación de un derecho que se concede o la omisión de un deber impuesto por ley. El Art. 1802 del Código Civil, *supra,* le impone la obligación a quien causa un daño,

cuales se le reclama a éste, en la llamada acción sobre cobro de dinero, *constituyen delito*; tipificados los mismos como tal por los Arts. 166 (apropiación ilegal agravada) y 216 (apropiación de fondos públicos) del Código Penal, 33 L.P.R.A. secs. 4272 y 4391. A esos efectos, conviene recordar que este Tribunal *específicamente* ha resuelto que la apropiación "es meramente una de las formas de culpa descritas en el artículo 1802 de nuestro Código Civil ...". *Sucn. Sorbá v. Viñas*, 49 D.P.R. 32, 37 (1935).

## IV

¿Constituye el dinero efectivamente sustraido por el codemandado Soto Santiago un "daño" reparable bajo el citado Art. 1802 del Código Civil?

De entrada aceptamos que, de ordinario, la sustracción de fondos públicos puede ocasionar, en adición al daño consistente en el dinero sustraido, *otros daños adicionales al erario*, daños a los que hace referencia la Opinión mayoritaria emitida.(³) El Estado, como hemos visto, no hace reclamación alguna respecto a estos otros daños en la demanda que radicara en el presente caso; por el contrario, únicamente reclama la suma de dinero ilegalmente apropiada por el codemandado Soto Santiago. *Dicha actuación ha tenido el efecto lamentable de confundir a la mayoría de los integrantes del Tribunal*; erróneamente resuelven que el hecho de que el Estado no haya reclamado dichos daños adicionales convierte la demanda radicada en una "acción restitutoria", ajena al Art. 1802 del Código Civil, ante.

El "daño" es el mal, perjuicio, deterioro, menoscabo,

---

mediando culpa o negligencia, de repararlo".

(³) Como se expresa en la opinión mayoritaria, pág. 312, entre dichos daños se encuentra " '[el] perjuicio patrimonial [que causa] el dar a los caudales del Estado un destino diferente del que tenía asignado, que obliga a proveer con otros medios económicos no previstos a las necesidades que aquellos caudales habían de cubrir o dejar desatendidos los servicios públicos para los que habían sido presupuestados' ".

aflicción, perturbaciones y lesiones que pueden ser infligidas por una persona a otra, como también el conjunto de perturbaciones y lesiones diversas producidas al patrimonio. Brau del Toro, *op. cit.*, pág. 427. En *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 207 (1988), establecimos que un " '[d]año' es *todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio*, causado en contravención a una norma jurídica y por el cual ha de responder otra". (Énfasis suplido.)

Entre las clasificaciones de daños recobrables bajo el citado Art. 1802 están los daños patrimoniales. El daño patrimonial puede manifestarse *como la pérdida o disminución de valores ya existentes*; esto es, como un empobrecimiento del patrimonio. Brau del Toro, *op. cit.*, pág. 428. Esto se conoce también como daño emergente o positivo. El daño patrimonial también es definido como el menoscabo patrimonial sufrido por la víctima y comprende tanto el desembolso efectivo como la ganancia frustrada o que haya dejado de obtener. A. Yagüez, *La responsabilidad civil*, Bilbao, Publicaciones de la Universidad de Deusto, 1988, Vol. 26, pág. 223. Puig Brutau (citando a De Cupis) define "daño emergente" como aquél efectuado cuando el objeto del daño es un interés actual, o sea, el interés relativo a un bien que ya corresponde a una persona en el instante en que el daño se ha ocasionado. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, T. II, Vol. 3, pág. 182.

El daño causado bajo las disposiciones del Art. 1802, ante, puede ser reparado en dos formas: la reparación natural o reintegración en forma específica y la reparación mediante indemnización pecunaria. *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443 (1985). La indemnización pecuniaria "crea una situación patrimonial que equivale a la destruida por el daño causado". Puig Brutau, *op. cit.*, pág. 191. La medida del daño resarcible tiene un carácter objetivo

cuando corresponde al valor del bien dañado. Puig Brutau, ante. "El 'resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en la que el dinero ocupará el lugar de los daños y perjuicios sufridos' ". (Énfasis suprimido.) *Rodríguez Cancel v. A.E.E.*, ante, págs. 455–456. Por otro lado, la reintegración en forma específica significa devolver o reponer las cosas o bienes dañados al estado que tenían antes del daño sufrido. Puig Brutau, ante.

Conforme lo anteriormente expuesto, entendemos que la acción del Estado instada con el propósito de recobrar unos fondos que ilegalmente se apropió el demandado *es una en reclamación de daños patrimoniales, los cuales son recobrables bajo el citado Art. 1802.* El hecho de que el Estado solamente haya reclamado esta partida de daños en específico, renunciando a las otras, *no tiene el efecto de excluir una causa de acción bajo el Art. 1802*, ante. La partida reclamada en la demanda es un daño *derivado directamente* de la alegada apropiación ilegal. *Ese daño consiste en una disminución patrimonial ocasionada por un acto ilícito del demandado.*[4]

En vista de lo expresado, *resulta obvio* que no procede una acción de enriquecimiento injusto en el caso de autos. No se cumple con el requisito de *inexistencia de un precepto legal que esté disponible al demandante para resarcir su lesión patrimonial.* El demandante tenía a su disposición una causa de acción bajo el Art. 1802, ante. La conducta imputada al codemandado Soto Santiago establece una apropiación ilegal de fondos públicos que, de ser probada, *constituye un acto culposo que causa un daño patrimonial al Estado, recobrable bajo las disposiciones del Art. 1802 del Código Civil de Puerto Rico*, ante.

---

[4] Se ha establecido que la verdadera naturaleza de la acción que se ejercita se determina no por el título que se consigna en la demanda y sí por las alegaciones contenidas en ella. *Muñoz v. Pardo*, 68 D.P.R. 612 (1948).

## V

Siendo ello así, el Estado demandante tenía el término de un año, que establece el Art. 1868 del Código Civil, ante, para radicar la acción en cobro del dinero ilegalmente apropiado por el codemandado Soto Santiago.[5] No lo hizo; dejó transcurrir en exceso de diez (10) años, desde que la Oficina del Contralor de Puerto Rico hizo público su informe, para radicar la misma. La acción radicada está prescrita. *El Estado, al igual que cualquier otro ciudadano, debe responder —y ser penalizado— por los actos negligentes en que incurre.*

---

[5] Sobre este aspecto, Vélez Torres nos dice:

"La prescripción anual que el artículo 1868 dispone para las acciones orientadas a exigir responsabilidad por actos culposos y negligentes según dispone el artículo 1802 se refiere a todas las acciones delictuales, es decir, no sólo a aquellas que nacen como consecuencia de actos negligentes o culposos, sino también a las resultantes de actos que son considerados delitos por el Código penal y otras leyes especiales." J. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Art. Printing, 1981, T. IV, Vol. 1, págs. 61–62.