AUTORIDAD DE ENERGÍA ELÉCTRICA, AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, ETC., demandantes y recurridas, *v.* PARTIDO NUEVO PROGRESISTA, CARLOS S. QUIRÓS VÁZQUEZ, ETC., demandados y recurrentes.

*Número:* RE-91-157          *Resuelto:* 23 de abril de 1991

*Armando Cardona Estelritz,* abogado del Partido Nuevo Progresista, recurrente; las recurridas no comparecieron.

## RESOLUCIÓN

A la solicitud de revisión, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Aociado Señor Negrón García emitió un voto concurrente, al cual se unen los Jueces Asociados Señores Rebollo López y Andréu García.

(*Fdo.*) Francisco R. Agrait Lladó

*Secretario General*

—O—

Voto concurrente del Juez Asociado Señor Negrón García, al cual se unen los Jueces Asociados Señores Rebollo López y Andréu García.

La corrupción y el desembolso indebido o ilegal de fondos públicos —en sus formas múltiples, a veces burdas y otras sofisticadas— son actos incompatibles con el sistema de gobierno democrático consagrado en nuestra Constitución y apuntalado en el *respeto a la dignidad humana y el dinero del pueblo como único soberano.* No importa las modalidades que adopten ni la jerarquía del funcionario involucrado; las mismas son intolerables.

En última instancia, quien verdaderamente se perjudica, no sólo en lo económico sino en lo moral, es la ciudadanía en general independientemente de su afiliación política. Es, pues, obligación de los tribunales reivindicar esos valores fundamentales.

I

El 13 de septiembre de 1988 las autoridades públicas de Energía Eléctrica (A.E.E.), de Acueductos y Alcantarillados (A.A.A.), de Edificios Públicos (A.E.P.) y la Compañía de Fomento Recreativo (C.F.R.) presentaron demanda en el Tribunal Superior, Sala de San Juan, contra el Partido Nuevo Progresista (P.N.P.) y varias personas que desde agosto a noviembre de 1984 se desempeñaron como altos funcionarios en esas entidades.

En síntesis, alegaron que en esos meses los codemandados, en su capacidad de funcionarios directivos, reclutaron ilegalmente varios de sus empleados para trabajar en un centro de cómputos electoral del P.N.P. Reclamaron los salarios así satisfechos. Los empleados reclutados *no* fueron demandados.

Contestada la demanda, previa solicitud al efecto, el Tribunal Superior (Hon. Wilfredo Alicea López, Juez) dictó sentencia sumaria y declaró con lugar la acción. En su dictamen encontró probado que, efectivamente, durante el período antes señalado los empleados en cuestión[1] no desempeñaron labor alguna para sus agencias. Por el contrario, realizaron trabajos exclusivamente para el P.N.P. Aun así, cobraron sus salarios de las agencias.[2]

El ilustrado foro de instancia se fundó en la doctrina de enriquecimiento injusto y aplicó los requisitos expuestos en *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817 (1988), a saber: (1) la existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3)

---

[1] De la Autoridad de Energía Eléctrica (A.E.E.): José Maldonado Candelario y Carmen Rodríguez Echevarría; de la Autoridad de Acueductos y Alcantarillados (A.A.A.): Sonia Ferrer Silva, Brenda Quiñones López, Diana Vázquez Sánchez y Maritza Nieves Parrilla; de la Autoridad de Edificios Públicos (A.E.P.): Aida L. Fuentes Pagán, y de la Compañía de Fomento Recreativo (C.F.R.): Dolores Hernández Ocaña.

[2] Se desglosan así: $5,000 por dos (2) empleados de la A.E.E.; $5,185.77 por tres (3) empleados de la A.A.A.; $1,287.92 por la empleada de la C.F.R., y $2,819.03 por la empleada de la A.E.P.

una conexión entre ese enriquecimiento y el empobrecimiento, y (4) la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.

En consecuencia, impuso responsabilidad *solidaria* al P.N.P. y a los funcionarios codemandados. Explicó que "en el caso de autos [la] responsabilidad nace de su *colusión* para propiciar un enriquecimiento injusto por parte del P.N.P. y en este sentido su responsabilidad es solidaria". Sentencia, pág. 26. La suma total a ser restituida asciende a $14,292.72, más los intereses al 11% anual a partir de la fecha de la presentación de la demanda.

Ante nos, el P.N.P. cuestiona que se haya resuelto sumariamente el caso y aplicado la figura de enriquecimiento injusto.

## II

No tiene razón. El error en torno a la utilización de la sentencia sumaria no fue cometido. El siguiente extracto de la sentencia apoya incuestionablemente esa vía decisoria:

En el caso que nos compete casi la totalidad de los hechos que se alegan como ciertos y sobre los cuales *se acompaña extensa prueba documental para sostenerlos no han sido siquiera controvertidos por la parte demandada.* Los escritos de oposición que ha sometido la parte demandante giran en torno a la doctrina jurídica que debe prevalecer al momento de adjudicar el pleito. Precisamente ese es el *caso típico en el cual procede la adjudicación del pleito mediante el mecanismo de sentencia sumaria ya que sólo resta adjudicar el derecho.* Sin embargo, debemos señalar un punto antes de así proceder. Aun cuando de la declaración jurada que se le tomó al Sr. Carlos S. Quirós y que se acompaña como anejo 10-A de la moción de sentencia sumaria del demandante surgen expresiones dirigidas a controvertir las alegaciones del demandante respecto a la participación del señor Quirós en el proceso que llevó a la contratación de estas personas para realizar labores en el Centro de Cómputos, visto el expediente en su totalidad dicha declaración no puede tener tal efecto. Luego de realizar un examen de los documentos en conjunto, no puede quedar duda razonable en el ánimo de este Tribunal sobre la participación del señor Quirós en la contratación

de los empleados que hizo la A.E.E. No estamos frente a la situación de una duda que amerite observar el comportamiento del señor Quirós en la silla testifical para entonces escoger entre su versión de los hechos o la de los Sres. Mervill Allende o Wilfredo Marcial, los cuales directamente han declarado sobre la participación del señor Quirós. Dicha participación surge de declaraciones juradas que constituyen prueba incriminatoria en su contra y las cuales tienen garantía de credibilidad. Tampoco el señor Quirós ha negado su participación directa en el Centro de Cómputos del P.N.P. a la fecha de los hechos. Por el contrario de las declaraciones juradas que se acompañan para sostener la causa de acción de este pleito no surge duda alguna de la participación de éste en dicho Centro de Cómputos. Si en adición a todo esto le unimos el hecho de la posición que éste ocupaba tanto en el P.N.P. como en la agencia A.E.E. sería irreal pretender sostener lo declarado por el señor Quirós. No hay razón alguna para entrar a celebrar una vista evidenciaria, quizás larga y tediosa, si ésta no aportará nada para la adjudicación de este pleito. En consecuencia y no habiendo duda sobre la participación del señor Quirós en estos hechos, avalamos la determinación de hecho que hiciéramos al principio de esta sentencia relacionados con su persona. (Énfasis suplido.) Sentencia, págs. 13–14.

## III

Superado el señalamiento procesal, evaluemos el referente a la doctrina de enriquecimiento injusto. El P.N.P. nos argumenta que no se determinó el monto de su enriquecimiento ni se estableció relación entre sí y el empobrecimiento de las agencias demandantes. Tampoco tiene razón.

En *Ortiz Andújar v. E.L.A.*, supra, indicamos:

El enriquecimiento puede ocurrir en dos modalidades diferentes: el positivo o aumento en el patrimonio (*lucrum emergens*) o el negativo o disminución del patrimonio (*damnum cessans*). El negativo (*damnum cessans*) se apuntala en la premisa de que un *no gasto* equivale a un *ingreso*. En otras palabras, *en la medida en que alguien sufre una pérdida que ordinariamente debería padecer otro, el primero le ahorra un gasto al segundo. Esa situación no tiene cabida en un sistema donde impera lo justo y debe ser remediada.* (Énfasis suplido.)

Según este prisma, es evidente que al recibir el P.N.P. un servicio de unos empleados pagados por las distintas agencias del

Gobierno, aquél se *enriqueció* en la medida en que *no* tuvo que incurrir en esos gastos de salario. En esta modalidad *damnum cessans* se desfiló suficiente prueba sobre la cantidad en la cual el P.N.P. se enriqueció.[3]

La cuestión no es nueva. Un comentarista específicamente nos ilustra así: "[T]ambién puede constituir el enriquecimiento en un *ahorro de gastos, supuesto distinto de recibir un incremento patrimonial,* como cuando *se emplea sin derecho* la actividad profesional *ajena* evitándose desembolsos por parte del que lo utiliza, siempre que la ventaja obtenida sea valuable en una suma de dinero." (Énfasis suplido.) J. Santos Briz, *Comentarios al Código Civil y compilaciones forales,* Madrid, Ed. Rev. Der. Privado, 1984, T. XXIV, pág. 33.

Y es que, según surge de la sentencia del foro de instancia —corroborado en los autos ante nos— "no hay conflicto de prueba ni ha sido negado en ningún momento que las agencias demandantes pagaron a sus empleados un sueldo mientras éstos realizaban sus labores en el Centro de Cómputos". Sentencia, pág. 17.

En resumen, según la doctrina de enriquecimiento injusto, se cumplieron los requisitos de nexo o conexión entre el empobrecimiento de las agencias demandantes y el enriquecimiento del codemandado P.N.P.

## IV

*Una advertencia final.* Aquí las agencias no demandaron a los empleados que cobraron fondos públicos, aun cuando éstos sabían que indebidamente estaban prestando sus servicios a un partido político y no a las agencias donde cobraron ilegalmente sus sueldos. Más allá de su valor de precedente judicial, algún propósito aleccionador ha de tener esta experiencia para madurar nuestra DEMOCRACIA. *En situaciones análogas, todo empleado público debe saber que puede ser incluido como demandado y, al final, también ser responsable.*

---

[3] La argumentación del recurrente, Partido Nuevo Progresista (P.N.P.) nos mueve a pensar que ha confundido la restitución de la acción por enriquecimiento injusto con una de indemnización por daños.

Es hora de desterrar de nuestro suelo la PARTIDOCRACIA, esto es, la creencia de que el Gobierno y el partido político mayoritario son una misma cosa. De acuerdo con nuestra Constitución, es axiomático que si la conducta en la cual se incurrió es ilegal o atenta contra las sanas normas jurídicas o administrativas vigentes para el mejor desembolso de fondos públicos, ni la *lealtad* de un ciudadano —incluso la de los funcionarios públicos hacia su partido político— ni la obediencia jerárquica son defensas válidas.

Por los fundamentos expuestos, concurrimos con la negativa a expedir el auto.