

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Municipio de Quebradillas<br><br>Peticionarios<br><br>v.<br><br>Corporación de Salud de Lares y otros<br><br>Recurridos | Certiorari<br><br>2011 TSPR 27<br><br>180 DPR _____ |

Número del Caso: CC - 2009 - 280

Fecha: 28 de febrero de 2011

Tribunal de Apelaciones:

      Región Judicial de Utuado Panel V

Juez Ponente:

      Hon. Andrés Salas Soler

Abogados de la Parte Peticionaria:

      Lcdo. Fernando L. Torres Ramírez
      Lcda. Aida Liz Murphy Lugo

Abogado de la Parte Recurrida:

      Lcdo. Manuel Martínez Umpierre

Oficina del Procurador General:

      Lcda. Lizette Mejías Avilés
      Procuradora General Auxiliar

Materia:    Contratos Municipales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Quebradillas

      Peticionarios

         v.

                    CC-2009-280

Corporación de Salud de Lares
Y Otros

      Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 28 de febrero de 2011.

Se nos solicita la revisión de una sentencia emitida el 28 de enero de 2009 por el Tribunal de Apelaciones, Región Judicial de Utuado. En esa sentencia, el foro apelativo intermedio desestimó la acción presentada por el Municipio de Quebradillas en cobro de dinero contra la Corporación de Salud de Lares y la reconvención presentada por la Corporación contra el Municipio por la misma causa de acción.

El Tribunal de Apelaciones confirmó la sentencia del foro primario porque entendió que las disposiciones incluidas en la Ley de Municipios

Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. secs. 4001 y ss., interpretadas en Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007), son claras al sostener que en ausencia de un contrato por escrito que cumpla con las formalidades exigidas por la ley, los acuerdos verbales entre las partes son nulos.

Por consiguiente, nos corresponde determinar si en ausencia de un contrato escrito entre las partes según dispone la Ley de Municipios Autónomos, supra, y la jurisprudencia interpretativa al respecto, procede la acción en cobro de dinero incoada por el Municipio contra la Corporación. Evaluada la controversia y en virtud del alto interés público que ostentan los fondos públicos, resolvemos en la afirmativa.

I

En 1994, el Municipio de Quebradillas convino verbalmente con la Corporación de Salud de Lares para que esta última administrara el Centro de Diagnóstico y Tratamiento de Quebradillas (CDT de Quebradillas). Según aduce el Municipio, entre los acuerdos verbales con la Corporación para la administración del CDT de Quebradillas, el Municipio se comprometió a mantener unos empleados municipales trabajando en el CDT de Quebradillas con el compromiso de que la Corporación le reembolsara al Municipio el dinero desembolsado para el pago de la nómina. Sin embargo, según alega el Municipio, la Corporación sólo realizó tres pagos por ese concepto.

Pasados unos años, el 4 de junio de 2002, el Municipio presentó una demanda en contra de la Corporación. En la demanda, el Municipio alegó que la Corporación le adeudaba una cantidad ascendente a $1,435,078 correspondiente a nóminas pagadas desde agosto de 1997 hasta el 2001, al mantenimiento y servicio de ambulancias y al pago de facturas de energía eléctrica por el uso de las instalaciones del CDT de Quebradillas.

El Municipio presentó una moción de sentencia sumaria. En ésta adujo que la Corporación no negó que era la encargada de la administración del CDT de Quebradillas desde el 1996. Por tanto, al ser la administradora, parte de las obligaciones y deberes de la Corporación era pagar por esos servicios y salarios. Además, el Municipio señaló que la Corporación era una institución o persona jurídica con fines de lucro, por lo que condonarle la deuda permitiría el uso de fondos públicos para fines privados en contravención al mandato constitucional contenido en el Artículo VI, Sección 9 de la Constitución de Puerto Rico, 1 L.P.R.A. Por último, apuntó que la Corporación no presentó prueba alguna que acreditara el supuesto acuerdo entre las partes mediante el cual el Municipio se haría cargo de esos pagos.

La Corporación se opuso a la moción de sentencia sumaria. Negó ser una institución con fines de lucro. Por el contrario, afirmó ser una institución sin fines de lucro que fue constituida para dar servicio gratuito a la

población. La Corporación adujo también que los fondos que el Municipio aportó para el pago de la nómina de los empleados fueron usados para fines públicos, ya que con ellos se brindaron servicios médicos sin costo alguno al pueblo de Quebradillas.

Además, con la moción en oposición a que se dictara sentencia sumaria la Corporación acompañó su Certificado de Incorporación del Departamento de Estado, así como una declaración jurada suscrita por el Sr. Rigoberto Hernández Nieves, Director de la Corporación. En esta declaración se rebatió la alegación del Municipio de que sería la Corporación quien se haría cargo del pago de las nóminas de los empleados, del servicio de ambulancia y del servicio de energía eléctrica.

El Tribunal de Primera Instancia emitió una resolución en la que declaró no ha lugar la moción de sentencia sumaria presentada por el Municipio. Concluyó que existía controversia sobre si la Corporación era o no una institución con fines de lucro.

Posteriormente, el Municipio enmendó su demanda. Repitió prácticamente las mismas alegaciones que en la demanda original. Sin embargo, incluyó como partes demandadas a la Hon. Rosa Pérez Perdomo, la entonces Secretaria de Salud y al Estado Libre Asociado de Puerto Rico. Asimismo, sustituyó como parte demandada a la Corporación de Salud de Lares para incluir en su lugar a la Corporación Centro de Salud de Lares, Inc. En la

demanda enmendada el Municipio señaló que el 2 de agosto de 1995 el entonces alcalde del Municipio de Quebradillas le escribió al Presidente de la Junta de Directores de la Corporación para aclarar y formalizar los acuerdos, compromisos y procedimientos que le permitieran a la Corporación administrar el CDT de Quebradillas. Como consecuencia de esta comunicación, añadió el Municipio, se hicieron gestiones para la celebración de una reunión entre funcionaros del Municipio de Quebradillas y representantes de la Corporación en la que se discutirían aspectos relacionados con el funcionamiento del CDT de Quebradillas. De la minuta que se redactó de la reunión alegadamente se desprende que el Municipio se comprometió a proveer el servicio de ambulancias con el personal necesario en el Centro de Salud las veinticuatro (24) horas al día, los siete (7) días de la semana; a pagar la factura de luz de la Corporación y del Asilo Municipal en partes iguales; y a pagar la nómina de los empleados. Sin embargo, todos estos acuerdos estaban sujetos a que la Legislatura Municipal los aprobara. Esa aprobación nunca se llevó a cabo. Incluso, el Municipio hace alusión a la certificación emitida por la Secretaria Interina de la Legislatura Municipal de Quebradillas que revela que no existía resolución u ordenanza que autorizara al entonces alcalde, Hon. Juan I. Rivera Vargas, a llegar a acuerdos con la Corporación.[1]

---

[1] Del informe sobre conferencia preliminar entre abogados

(continúa...)

El 24 de octubre de 2008 el Tribunal de Primera Instancia dictó sentencia. En ésta, luego de interpretar la Ley de Municipios Autónomos y su jurisprudencia interpretativa, el foro primario concluyó que la exigencia de que todo contrato municipal sea por escrito tiene un carácter constitutivo y por ello, al no haberse cumplido con ese requisito, "no nace a la vida jurídica un contrato válido y exigible entre las partes." Es decir, el tribunal concluyó que el acuerdo entre las partes era completamente nulo. Por consiguiente, desestimó la demanda del Municipio. A su vez, el foro primario desestimó la reconvención de la Corporación por los mismos fundamentos. Igualmente, se desestimaron las demandas contra la ex Secretaria Pérez Perdomo y contra el Estado Libre Asociado de Puerto Rico.

El Tribunal de Apelaciones confirmó. Primero, en cuanto al señalamiento del peticionario de que no debía resolverse sumariamente la controversia, el foro apelativo intermedio entendió que no existía controversia real sustancial en cuanto a ningún hecho medular y que como cuestión de derecho procedía que se dictara

_____

las partes estipularon que la Corporación es una persona jurídica sin fines de lucro. Se estipuló, a su vez, la reunión celebrada entre funcionarios del Municipio de Quebradillas y la Corporación el 8 de enero de 1998. Por último, se hizo constar entre las estipulaciones la certificación de la Secretaría Municipal que reflejaba que no había ordenanza o resolución de parte de la Legislatura Municipal que autorizara al Alcalde a contratar con la Corporación.

sentencia sumaria contra ambas partes como lo hizo el foro primario.

En cuanto al hecho de que las transacciones realizadas entre el Municipio y la Corporación fueron verbales, el Tribunal de Apelaciones entendió, al igual que el foro primario, que la Ley de Municipios Autónomos, y el caso Colón Colón v. Mun. de Arecibo, supra, son claros al sostener que en ausencia de un contrato por escrito que cumpla con las formalidades exigidas por la ley, los acuerdos verbales entre las partes son nulos. Por consiguiente, señaló que no procedía hablar de enriquecimiento injusto en su aplicación inversa, ya que al no existir relación contractual por escrito entre las partes, "toda relación está viciada de nulidad, por lo que no genera derecho alguno a las partes [involucradas]." Sentencia del Tribunal de Apelaciones, pág. 10. Por último, el Tribunal de Apelaciones concluyó que el "foro de instancia ejerció su discreción con corrección y razonabilidad". Id.

Inconforme nuevamente, el Municipio presentó ante este Tribunal un recurso de certiorari. Entiende que el alcance de nuestra decisión en Colón Colón. v. Mun. de Arecibo, supra, reafirma la obligación de los tribunales de ser celosos guardianes de los intereses públicos. Añade que el Tribunal de Apelaciones erró también al no resolver las mociones de sentencia sumaria a la luz de la doctrina de enriquecimiento injusto.

El 19 de octubre de 2009 expedimos el auto. Con la comparecencia de ambas partes procedemos a resolver.

II

Como primer señalamiento de error, el Municipio alega que la interpretación que los foros inferiores han hecho de la Ley de Municipios Autónomos, supra, y del caso Colón Colón v. Mun. de Arecibo, supra, no tiene el alcance dado y, peor aún, que esta interpretación ignora la obligación de los tribunales de ser celosos guardianes de los fondos públicos.

De entrada, es menester señalar que el Art. 2.001(r) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4051(r), da el poder a los municipios de

> [c]ontratar con cualquier agencia pública y con cualquier persona natural o jurídica, para el desarrollo, administración y operación conjunta, coordinada o delegada de instalaciones para brindar servicios públicos y para la construcción, reparación y mantenimiento de instalaciones municipales. Tales actividades incluirán la contratación de proyectos conjuntos con entidades públicas o privadas, con o sin fines de lucro, para la construcción y el desarrollo de viviendas de interés social, el desarrollo y la operación de programas o instalaciones municipales y cualesquiera otras donde el municipio requiera la participación de personas naturales o jurídicas externas para la viabilidad de los proyectos y programas. La formalización de la contratación requerirá la aprobación previa de la legislatura municipal [énfasis suplido].

Igualmente, el Art. 8.004, 21 L.P.R.A. sec. 4354, señala que "[l]as obligaciones y [los] desembolsos de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y

equipo, reclamaciones o cualesquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas".

Cónsono con lo anterior, "[l]as distintas disposiciones estatutarias regulando la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento". Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973). Por tan crucial importancia, en reiteradas ocasiones hemos señalado que "la buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección...". Lugo v. Municipio Guayama, 163 D.P.R. 208, 214 (2004). Véanse, además, Quest Diagnostic v. Mun. San Juan, Op. de 14 de mayo de 2009, 2009 T.S.P.R. 77, 2009 J.T.S. 80, 175 D.P.R. __ (2009); Ríos v. Municipio Isabela, 159 D.P.R. 839 (2003); Fernández & Gutierrez v. Mun. San Juan, 147 D.P.R. 824, 829 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005 (1994); Mar-Mol Co. Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).

En Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 249 (2007), fuimos enfáticos cuando señalamos "que los

tribunales debemos velar por el cumplimiento con las disposiciones legales dirigidas a proteger los desembolsos públicos, ya que esta normativa tiene como fin proteger el interés público en los dineros del pueblo y no a las partes contratantes". Por ende, la contratación con un municipio requiere de unos formalismos y procedimientos específicos que persiguen, precisamente, proteger el erario. Por esta razón, "la facultad del municipio de obligar fondos públicos para el pago de una obligación, está supeditada a que se sigan los procedimientos establecidos por ley". Id., pág. 248.

El Artículo 8.016 de la Ley de Municipios Autónomos, supra, también le impone a los municipios la obligación de mantener "un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme a las secs. 97 et seq. del Título 2 y su Reglamento". Véase, Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 L.P.R.A. sec. 97. Es decir, para contratar con un municipio es necesario: (1) que el acuerdo se haya hecho constar por escrito; (2) que se mantenga un registro fiel con miras a establecer la existencia del contrato; (3) que se remita copia de éste a la Oficina del Contralor y; (4) que se acredite la certeza de tiempo, esto es, que el contrato se otorgó quince días antes. Véanse, Colón Colón

v. Mun. de Arecibo, supra, págs. 725-726; Lugo v. Municipio Guayama, supra, págs. 215-216; Las Marías v. Municipio San Juan, 159 D.P.R. 868, 878 (2003); Ríos v. Municipio Isabela, supra, págs. 845-846; Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 53-54 (1988). Estos requisitos deben ser observados rigurosamente ya que su ausencia priva de eficacia y validez el acuerdo con el municipio. Lugo v. Municipio Guayama, supra, pág. 216. Sin embargo, aclaramos que con la aprobación de la Ley Núm. 127 de 31 de mayo de 2004, el incumplimiento con el requisito de que todo contrato sea registrado y remitido a la Oficina del Contralor tal como lo exigen el Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, supra, y el Art. 8.016 de la Ley de Municipios Autónomos, supra, no tiene el efecto de anular el contrato en controversia, aunque impide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a la Oficina del Contralor. Id. Véase, además, Quest Diagnostic v. Mun. San Juan, supra.

Cuando se trata de contratación municipal, debemos tener en mente la clara política pública que impera a favor de la aplicación de una normativa restrictiva. Cordero Vélez v. Mun. de Guánica, supra, pág. 248; Lugo v. Municipio Guayama, supra, pág. 215. Todo esto responde a que la sana y recta administración pública es un asunto revestido del más alto interés público. Quest Diagnostic v. Mun. San Juan, supra; Cordero Vélez v. Mun. de

Guánica, supra, pág. 248; Fernández & Gutierrez v. Mun. San Juan, supra. En vista de tan trascendental interés, hemos asegurado que en casos de contratación municipal, las partes privadas deben ejercer un rol más activo, toda vez que no están exentos del cumplimiento de la ley. Quest Diagnostic v. Mun. San Juan, supra; Cordero Vélez v. Mun. de Guánica, supra, pág. 251; Las Marías v. Municipio San Juan, supra, pág. 880; Lugo v. Municipio Guayama, supra, pág. 215.

Ahora bien, el cumplimiento con las disposiciones de la Ley de Municipios Autónomos no corresponde únicamente a las personas privadas. Los tribunales "desalentamos la práctica de incumplir con los procedimientos establecidos en la Ley de Municipios para el otorgamiento de contratos municipales". Cordero Vélez v. Mun. de Guánica, supra, pág. 253. Por tanto, ningún Municipio podrá satisfacer deuda alguna que no surja de un contrato que conste por escrito y que a su vez haya sido registrado y remitido a la Oficina del Contralor. La exigencia de que los contratos con los municipios consten por escrito responde a un requisito de carácter constitutivo que el legislador incluyó con el propósito de crear un "mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales." Colón Colón v. Mun. de Arecibo, supra, pág. 726.

III

Sin lugar a dudas, cuando el Municipio de Quebradillas acordó con la Corporación en 1995 la administración del CDT de Quebradillas, no hubo más que acuerdos verbales entre las partes. Por ello, el Tribunal de Primera Instancia señaló en su sentencia que como los requisitos de contratación con los municipios son de carácter constitutivo y no se cumplieron, no nació a la vida jurídica un contrato válido y exigible entre las partes. Por ende, el Tribunal de Primera Instancia concluyó que en virtud de Colón Colón v. Mun. de Arecibo, supra, al no existir un contrato escrito, no procedía la acción en cobro de dinero presentada por el Municipio. El Tribunal de Apelaciones erró al confirmar esa conclusión y dictamen.

A través de toda la jurisprudencia en la que hemos evaluado casos como éstos, hemos recalcado que "exigir que los contratos se reduzcan a escrito tiene una insoslayable dimensión de sana administración pública". Colón Colón v. Mun. de Arecibo, supra, pág. 727. Véanse, además, Fernández & Gutierrez v. Mun. San Juan, supra, pág. 829; Ríos v. Municipio Isabela, supra, pág. 845. Es decir, nuestra conclusión reiterada responde al principio subyacente en la contratación con el gobierno: la confianza de nuestro pueblo en la correcta utilización del peculio público. Consiguientemente, cuando nos enfrentamos a controversias que involucren fondos

públicos, los tribunales debemos vigilar principalmente que no se ponga en tela de juicio la correcta utilización del dinero de nuestro pueblo.

Así, aunque en Colón Colón v. Mun. de Arecibo, supra, determinamos que la acción en cobro de dinero incoada por el señor Colón Colón por los servicios brindados al Municipio de Arecibo no procedía ante la ausencia de un contrato por escrito entre las partes, nuestra conclusión a esos efectos no iba dirigida a favorecer sin razón alguna a los municipios. Más bien nuestro proceder siempre ha sido salvaguardar los fondos públicos. De esa forma honramos el valor cardinal que por años les hemos otorgado. En última instancia, de no hacerlo serían los intereses de nuestros ciudadanos los que se verían lesionados.

En los casos sobre contratación que hemos evaluado a la luz de la Ley de Municipios Autónomos, la parte perjudicada es un ente privado. En cambio, en la situación de hechos que hoy nos ocupa quien reclama el reembolso de dinero no es una persona privada sino el Municipio. Esa distinción es crucial. La Corporación sostiene que el Municipio "pretende que este... Tribunal... entienda y resuelva que una actuación nula de un Municipio, no puede enforzarse [sic] si es [en] contra de los intereses del Municipio pero, a contrario sensu, puede enforzarse [sic] si beneficia al Municipio." Alegato de la parte recurrida, pág. 5. Esta conclusión es

errada. Aquí no se trata de favorecer a un municipio. Se trata, como hemos dicho anteriormente, de proteger el dinero del Pueblo. Si el Municipio desembolsó dinero público incorrectamente en virtud de un acuerdo nulo, tiene derecho a recobrarlo. Si concluyéramos lo contrario, estaríamos dejando en manos privadas unos fondos públicos que no le corresponden.

Por esta razón, si el acuerdo entre las partes carece de eficacia, no procede que el Municipio de Quebradillas desembolsara dinero alguno en virtud de un contrato que nunca advino a la vida. Después de todo, la adecuada fiscalización de la utilización del erario resulta de vital importancia para mantener la confianza del ciudadano en el gobierno y la salud de nuestra democracia. Véase, RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999).

Por otra parte, la Corporación afirma que constituye una salida "ilegal, antijurídica e inmoral" que el Municipio de Quebradillas pretenda que se cree una norma distinta para cuando es un municipio quien reclama, ya que "se estaría dando carta abierta a los municipios para que no cumplieran con la Ley Municipal y de esta manera decidieran *ex parte* qué contratos quieren cumplir y cuáles no quieren cumplir". Alegato de la Parte recurrida, págs. 10-11. Ese razonamiento no nos convence. No hacer la distinción cuando es un ente público el que reclama permitiría que un funcionario inescrupuloso

favorezca a ciertos contratistas, pagándoles de antemano por unos servicios, pero sin un contrato escrito, con la intención de que cuando se inicie el proceso legal de cobro de dinero, se pueda levantar como defensa que el contrato no cumple con los requisitos formales exigidos por ley y el contratista no tenga que devolver lo que se le pagó ilegalmente. Eso socavaría la política pública de "protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento". Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1974).

Por consiguiente, en Colón Colón v. Mun. de Arecibo, supra, en protección del erario, no validamos la acción en cobro de dinero de un individuo contra un municipio. Por esa misma razón procede la acción de cobro a la inversa, de un municipio a un ente privado. Así lo exige el valor apremiante que nuestro sistema jurídico le otorga a la sana administración de los fondos públicos.

> La corrupción y el desembolso indebido o ilegal de fondos públicos -en sus formas múltiples, a veces burdas y otras sofisticadas- son actos incompatibles con el sistema de gobierno democrático consagrado en nuestra Constitución y apuntalado en el respeto a la dignidad humana y los dineros del pueblo como único soberano. No importa las modalidades que adopten ni la jerarquía del funcionario involucrado, las mismas son intolerables. En última instancia, quien verdaderamente se perjudica, no sólo en lo económico sino en lo moral, es la ciudadanía en general independientemente de su afiliación política. Es, pues, obligación de los tribunales reivindicar esos valores fundamentales.

E.L.A. v. Soto Santiago, 131 D.P.R. 304, 322 (1992), citando A.E.E. y A.A.A. v. P.N.P., 128 D.P.R. 294, 294-295 (1991) (Voto concurrente del Juez Asociado señor NEGRÓN GARCÍA, al cual se unieron los Jueces Asociados señores REBOLLO LÓPEZ y ANDRÉU GARCÍA.

Sin duda, no podemos validar la erogación de fondos públicos indiscriminadamente; su utilización debe ser cuidadosa. E.L.A. v. Cole, 164 D.P.R 608, 643 (2005). Es nuestro deber y responsabilidad velar porque los fondos públicos respondan directamente a las necesidades de la ciudadanía. Id.

> Específicamente, en el contexto de la contratación gubernamental, hemos dicho que la misma está revestida del más alto interés público en cuanto involucra el uso de bienes o de fondos públicos. Por eso deben aplicarse rigurosamente las normas sobre los contratos y el desembolso de esos fondos para proteger los intereses y el dinero del Pueblo. Principalmente, no se puede ignorar que todo organismo gubernamental está obligado a observar cabalmente la esencia de las disposiciones constitucionales porque los fondos públicos sólo pueden gastarse para fines públicos legítimos. Art. VI, Sec. 9, Const. E.L.A., L.P.R.A. Tomo 1; De Jesús González v. A.C., 148 D.P.R. 255 (1999).

C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 452 (2007).

IV

Nos resta determinar qué remedio ampara al Municipio de Quebradillas para obtener el reembolso de los fondos que fueron desembolsados ilegalmente. Al respecto, el Municipio indica que el foro intermedio erró al no resolver las mociones de sentencia sumaria a la luz de la doctrina de enriquecimiento injusto en su vertiente

negativa. Por su parte, la parte recurrida niega la utilización de esta figura pues

> [a] través de la jurisprudencia innumerables ciudadanos y personas particulares han brindado servicios a los municipios por cientos de miles de dólares y no han podido cobrar sus servicios por el requisito estatutario de que los contratos tienen que ser por escrito. Mal puede ahora el Municipio de Quebradillas pretender que habiendo incurrido en la misma falla, que privó a todos estos ciudadanos y corporaciones de cobrar por sus servicios, no se aplique la letra de la ley y se permita que el Municipio continúe su reclamación.

> Alegato de la parte recurrida, pág. 11.

En Colón Colón v. Mun. de Arecibo, supra, pág. 728, señalamos que "conforme al alto interés público involucrado, no hay cabida en estos casos para los remedios en equidad". Ahora bien, no podemos perder de perspectiva que ese análisis lo hicimos fundamentándonos en el principio de que permitir una acción en equidad contra un municipio para exigir una prestación producto de un contrato nulo violaría la política pública establecida en la Ley Municipal.

Ahora bien, en E.L.A. v. Soto Santiago, supra, resolvimos que el término prescriptivo para instar una acción de cobro de dinero con el objetivo de restituir unos fondos públicos obtenidos ilícitamente, es el de quince años dispuesto en el Artículo 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Señalamos entonces que, "en su fondo, tratamos aquí con una situación que permite invocar el principio de derecho de que nadie debe

enriquecerse injustamente a costa de otro". E.L.A. v. Soto Santiago, supra, pág. 317.

Procede invocar el mismo principio aquí. Como no existe disposición legislativa expresa en la Ley de Municipios Autónomos que atienda directamente este tipo de acción legal por parte de los municipios cuando no existe un contrato escrito entre las partes, procede que resolvamos conforme a equidad. Art. 7 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 7.[2]

"La doctrina de enriquecimiento injusto es casi tan antigua como el derecho mismo". E.L.A. v. Cole, supra, pág. 632. "Esta figura se encuentra subsumida en la figura de los cuasicontratos". Id. "Los cuasicontratos generan obligaciones a base del principio de que nadie debe enriquecerse u obtener lucro inequitativamente a costa del perjuicio de otro". C.J. Irizarry Yunqué, Responsabilidad civil extracontractual, 6ta. ed., Colombia, Panamericana Formas e Impresos S.A., 2006, pág. 3. "[E]s un principio general del derecho fundado en la equidad, que está presente en todo el ordenamiento jurídico". Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 822 (1988). "Es un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de

---

[2] Dispone que "cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos".

justicia". <u>E.L.A. v. Cole</u>, <u>supra</u>. Véase, además, <u>Silva v. Comisión Industrial</u>, 91 D.P.R. 891 (1965).

Recurrimos a esta figura cuando "la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente." <u>Ortiz Andújar v. E.L.A.</u>, <u>id</u>. Véanse, <u>Garriga, Hijo, Inc. v. Cond. Marbella</u>, 143 D.P.R. 927, 933 (1997); <u>E.L.A. v. Soto Santiago</u>, <u>supra</u>, pág. 319. Véase, además, J. Puig Brutau, <u>Fundamentos de derecho civil</u>, Barcelona, Ed. Bosch, 1983, T. II, Vol. 3, pág. 44.

Por eso, el enriquecimiento injusto se configura únicamente cuando concurren los siguientes requisitos: (1) la existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) una conexión entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique el enriquecimiento; y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. <u>Hatton v. Mun. de Ponce</u>, <u>supra</u>, pág. 1010; <u>Ortiz Andujar v. E.L.A.</u>, <u>supra</u>, pág. 823.

La doctrina ha señalado que el enriquecimiento injusto puede darse en dos modalidades. <u>E.L.A. v. Cole</u>, <u>supra</u>, pág. 634. "[E]l positivo o aumento en el patrimonio (*lucrum emergens*), o el negativo o disminución del patrimonio (*damnum cessans*)". <u>Id</u>. Cuando hablamos de enriquecimiento injusto negativo (*damnun cessans*) o a la

inversa nos referimos al caso en el que "un *no gasto* equivale a un ingreso. En otras palabras, en la medida en que alguien sufre una pérdida que ordinariamente debería padecer otro, el primero le ahorra un gasto al segundo. Esta situación no tiene cabida en un sistema donde impera lo justo y debe ser remediada." Id., págs. 634-635. Véase, Ortiz Andújar, supra, págs. 826-827.

En el pasado no hemos permitido que personas privadas invoquen remedios en equidad frente a los municipios con los que contratan, porque "es doctrina reiterada que dichos remedios no se aplicarán cuando resulte[n] contrario[s] a una clara política pública plasmada en un estatuto o en la Constitución". Las Marías v. Municipio San Juan, supra, págs. 875-876. Véanse, además, Hatton v. Mun. de Ponce, supra, pág. 1010; Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 684-685 (1987). Del mismo modo, como excepción, sí le daremos paso a los remedios en equidad cuando no permitirlos resulte igualmente contrario a una política pública estatuida en una ley o en la Constitución.

Precisamente en el caso particular ante nuestra consideración se configura la excepción a la regla general de no permitir los remedios en equidad. No permitir la acción de enriquecimiento injusto sería contrario a la política pública de sana administración de los fondos públicos estatuida en la Ley de Municipios Autónomos.

No hemos permitido que personas privadas invoquen remedios en equidad para recuperar sus inversiones porque eso violaría el objetivo que se persigue con los requisitos formales de contratación que impone la Ley de Municipios Autónomos. Es decir, avalarlo iría en contra del "gran interés del Estado en promover una sana y recta administración pública, [que prevenga] el despilfarro, la corrupción y el amiguismo en la contratación gubernamental". Las Marías v. Municipio San Juan, supra, pág. 875. Véanse, Fernández & Gutierrez v. Mun. San Juan, supra, pág. 832; Hatton v. Mun. de Ponce, supra, 1006; Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R 37, 54 (1988); Morales v. Municipio de Toa Baja, supra, pág. 693. De igual modo, no aplicar esta figura cuando quien reclama es un municipio, estaría en contra de una sana administración pública, al dejar en manos privadas los fondos públicos que le fueron desembolsados en contra de la ley. "[S]u efecto sería violentar principios de suma importancia encarnados en la Constitución y las leyes del país". E.L.A. v. Cole, supra, pág. 634. Véanse, Colón Colón v. Mun. de Arecibo, supra; Hatton v Mun. de Ponce, supra.

Evaluada toda la doctrina anteriormente reseñada, concluimos que procede la acción en cobro de dinero incoada por el Municipio contra la Corporación, al amparo de la figura de enriquecimiento injusto. Como hemos señalado en el pasado, "[l]as normas aplicables [a la

contratación con los Municipios] persiguen proteger el interés público y no a las partes contratantes". Morales v. Municipio de Toa Baja, supra, pág. 697. "De este modo se logra una mayor transparencia en la administración pública, a la vez que se promueve la estabilidad, certeza y credibilidad en la contratación municipal. El beneficiario mayor es, por consiguiente, el interés público". Las Marías v. Municipio San Juan, supra, pág. 881.

V

Por los fundamentos expuestos se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro primario para procedimientos ulteriores que sean acordes con lo resuelto aquí.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Quebradillas

        Peticionarios


              v.
                                    CC-2009-280
Corporación de Salud de Lares
Y Otros

        Recurridos



                    SENTENCIA

        En San Juan, Puerto Rico, a 28 de febrero de 2011.


        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro primario para procedimientos ulteriores que sean acordes con lo resuelto aquí.

        Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita. La Jueza Asociada señora Pabón Charneco no intervino.



                    Aida I. Oquendo Graulau
                Secretaria del Tribunal Supremo