El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Se nos solicita la revisión de una sentencia emitida el 28 de enero de 2009 por el Tribunal de Apelaciones, Región Judicial de Utuado. En esa sentencia, el foro apelativo in-termedio desestimó la acción presentada por el Municipio de Quebradillas en cobro de dinero contra la Corporación de Salud de Lares y la reconvención presentada por la Cor-poración contra el Municipio por la misma causa de acción.
El Tribunal de Apelaciones confirmó la sentencia del foro primario porque entendió que las disposiciones inclui-das en la Ley de Municipios Autónomos de 1991 (Ley de Municipios Autónomos), Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.PR.A. see. 4001 et seq., in-terpretadas en Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007), son claras al sostener que en ausencia de un contrato por escrito que cumpla con las formalidades exi-gidas por la ley, los acuerdos verbales entre las partes son nulos.
Por consiguiente, nos corresponde determinar si en au-sencia de un contrato escrito entre las partes, según dis-pone la Ley de Municipios Autónomos y la jurisprudencia *1007 interpretativa al respecto, procede la acción en cobro de dinero incoada por el Municipio contra la Corporación. Evaluada la controversia y por el alto interés público que ostentan los fondos públicos, resolvemos en la afirmativa.
I
En 1994, el municipio de Quebradillas (Municipio) con-vino verbalmente con la Corporación de Salud de Lares para que esta última administrara el Centro de Diagnós-tico y Tratamiento de Quebradillas (CDT de Quebradillas). Según aduce el Municipio, entre los acuerdos verbales con la Corporación para la administración del CDT de Quebra-dillas, el Municipio se comprometió a mantener unos em-pleados municipales trabajando en el CDT de Quebradillas con el compromiso de que la Corporación le reembolsara al Municipio el dinero desembolsado para el pago de la nómina. Sin embargo, según alega el Municipio, la Corpo-ración sólo realizó tres pagos por ese concepto.
Pasados unos años, el 4 de junio de 2002, el Municipio presentó una demanda contra la Corporación. En la de-manda, el Municipio alegó que la Corporación le adeudaba una cantidad ascendente a $1,435,078 correspondiente a nóminas pagadas desde agosto de 1997 hasta el 2001, al mantenimiento y servicio de ambulancias y al pago de fac-turas de energía eléctrica por el uso de las instalaciones del CDT de Quebradillas.
El Municipio presentó una moción de sentencia sumaria. En ésta adujo que la Corporación no negó que era la encargada de la administración del CDT de Quebradi-llas desde 1996. Por lo tanto, al ser la administradora, parte de las obligaciones y los deberes de la Corporación era pagar por esos servicios y salarios. Además, el Munici-pio señaló que la Corporación era una institución o persona jurídica con fines de lucro, por lo que condonarle la deuda permitiría el uso de fondos públicos para fines privados en contravención al mandato constitucional contenido en el Art. VI, Sec. 9 de la Constitución de Puerto Rico, L.P.R.A., *1008 Tomo 1. Por último, apuntó que la Corporación no presentó prueba alguna que acreditara el supuesto acuerdo entre las partes mediante el cual el Municipio se haría cargo de esos pagos.
La Corporación se opuso a la moción de sentencia sumaria. Negó ser una institución con fines de lucro. Por el contrario, afirmó ser una institución sin fines de lucro que fue constituida para dar servicio gratuito a la población. La Corporación adujo también que los fondos que el Municipio aportó para el pago de la nómina de los empleados fueron usados para fines públicos, ya que con ellos se brindaron servicios médicos sin costo alguno al pueblo de Quebra-dillas.
Además, con la moción en oposición a que se dictara sentencia sumaria la Corporación acompañó su certificado de incorporación del Departamento de Estado, así como una declaración jurada suscrita por el Sr. Rigoberto Her-nández Nieves, Director de la Corporación. En esta decla-ración se rebatió la alegación del Municipio de que sería la Corporación quien se haría cargo del pago de las nóminas de los empleados, del servicio de ambulancia y del servicio de energía eléctrica.
El Tribunal de Primera Instancia emitió una resolución en la que declaró "no ha lugar” la moción de sentencia su-maria presentada por el Municipio. Concluyó que existía controversia sobre si la Corporación era o no una institu-ción con fines de lucro.
Posteriormente, el Municipio enmendó su demanda. Re-pitió prácticamente las mismas alegaciones que en la de-manda original. Sin embargo, incluyó como partes deman-dadas a la Hon. Rosa Pérez Perdomo, la entonces Secretaria de Salud y al Estado Libre Asociado de Puerto Rico. Asimismo, sustituyó como parte demandada a la Cor-poración de Salud de Lares para incluir en su lugar a la Corporación Centro de Salud de Lares, Inc. En la demanda enmendada el Municipio señaló que el 2 de agosto de 1995 el entonces alcalde del municipio de Quebradillas le escri-bió al presidente de la Junta de Directores de la Corpora- *1009 ción para aclarar y formalizar los acuerdos, compromisos y procedimientos que le permitieran a la Corporación admi-nistrar el CDT de Quebradillas. Como consecuencia de esta comunicación, añadió el Municipio, se hicieron gestiones para la celebración de una reunión entre funcionarios del Municipio y representantes de la Corporación en la que se discutirían aspectos relacionados con el funcionamiento del CDT de Quebradillas. De la minuta que se redactó de la reunión, alegadamente, surge que el Municipio se com-prometió a proveer el servicio de ambulancias con el personal necesario en el Centro de Salud las veinticuatro horas al día, los siete días de la semana; a pagar la factura de luz de la Corporación y del Asilo Municipal en partes igua-les, y a pagar la nómina de los empleados. Sin embargo, todos estos acuerdos estaban sujetos a que la legislatura municipal los aprobara. Esa aprobación nunca se llevó a cabo. Incluso, el Municipio hace alusión a la certificación emitida por la Secretaria Interina de la legislatura municipal de Quebradillas que revela que no existía resolución u ordenanza que autorizara al entonces alcalde, Hon. Juan I. Rivera Vargas, a llegar a acuerdos con la Corporación.(1)
El 24 de octubre de 2008, el Tribunal de Primera Ins-tancia dictó sentencia. En ésta, luego de interpretar la Ley de Municipios Autónomos y su jurisprudencia interpreta-tiva, el foro primario concluyó que la exigencia de que todo contrato municipal sea por escrito tiene un carácter cons-titutivo y por ello, al no haberse cumplido con ese requisito, “no nace a la vida jurídica un contrato válido y exigible entre las partes”. Es decir, el tribunal concluyó que el acuerdo entre las partes era completamente nulo. Por con-siguiente, desestimó la demanda del Municipio. A su vez, el foro primario desestimó la reconvención de la Corporación *1010 por los mismos fundamentos. Igualmente, se desestimaron las demandas contra la ex Secretaria Pérez Perdomo y contra el Estado Libre Asociado de Puerto Rico.
El Tribunal de Apelaciones confirmó. Primero, en cuanto al señalamiento del peticionario de que no debía resolverse sumariamente la controversia, el foro apelativo intermedio entendió que no existía controversia real sus-tancial en cuanto a ningún hecho medular y que como cuestión de derecho procedía que se dictara sentencia su-maria contra ambas partes como lo hizo el foro primario.
En cuanto al hecho de que las transacciones realizadas entre el Municipio y la Corporación fueron verbales, el Tribunal de Apelaciones entendió, al igual que el foro prima-rio, que la Ley de Municipios Autónomos de 1991, y el caso Colón Colón v. Mun. de Arecibo, supra, son claros al soste-ner que en ausencia de un contrato por escrito que cumpla con las formalidades exigidas por la ley, los acuerdos ver-bales entre las partes son nulos. Por consiguiente, señaló que no procedía hablar de enriquecimiento injusto en su aplicación inversa, ya que al no existir una relación contractual por escrito entre las partes, “toda relación está viciada de nulidad, por lo que no genera derecho alguno a las partes [involucradas]”. Sentencia del Tribunal de Ape-laciones, pág. 10. Por último, el Tribunal de Apelaciones concluyó que el “foro de instancia ejerció su discreción con corrección y razonabilidad”. Id.
Inconforme nuevamente, el Municipio presentó ante este Tribunal un recurso de certiorari. Entiende que el al-cance de nuestra decisión en Colón Colón v. Mun. de Are-cibo, supra, reafirma la obligación de los tribunales de ser celosos guardianes de los intereses públicos. Añade que el Tribunal de Apelaciones erró también al no resolver las mociones de sentencia sumaria a la luz de la doctrina de enriquecimiento injusto.
El 19 de octubre de 2009 expedimos el auto. Con la com-parecencia de ambas partes procedemos a resolver.
*1011 II
Como primer señalamiento de error, el Municipio alega que la interpretación que los foros inferiores han hecho de la Ley de Municipios Autónomos de 1991 y del caso Colón Colón v. Mun. de Arecibo, supra, no tiene el alcance dado y, peor aún, que esta interpretación ignora la obligación de los tribunales de ser celosos guardianes de los fondos públicos.
De entrada, es menester señalar que el Art. 2.001(r) de la Ley de Municipios Autónomos de 1991 (21 L.P.R.A. sec. 4051(r)), da el poder a los municipios para
[c]ontratar con cualquier agencia pública y con cualquier persona natural o jurídica, para el desarrollo, administración y operación conjunta, coordinada o delegada de instalaciones para brindar servicios públicos y para la construcción, repara-ción y mantenimiento de instalaciones municipales. Tales ac-tividades incluirán la contratación de proyectos conjuntos con entidades públicas o privadas, con o sin fines de lucro, para la construcción y el desarrollo de viviendas de interés social, el desarrollo y la operación de programas o instalaciones muni-cipales y cualesquiera otras donde el municipio requiera la participación de personas naturales o jurídicas externas para la viabilidad de los proyectos y programas. La formalización de la contratación requerirá la aprobación previa de la legis-latura municipal. (Enfasis suplido.)
Igualmente, el Art. 8.004 (21 L.P.R.A. sec. 4354) señala, en lo pertinente, que “[l]as obligaciones y [los] desembolsos de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y equipo, reclamaciones o cualesquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas”.
Cónsono con esto, “[l]as distintas disposiciones estatutarias regulando la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y *1012 dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento”. Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973). Por tan crucial importancia, en reiteradas ocasiones hemos se-ñalado que “la buena administración de un gobierno es tina virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección ...”. Lugo v. Municipio Guayama, 163 D.P.R. 208, 214 (2004), citando a Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990). Véanse, además: Quest Diagnostic v. Mun. San Juan, 175 D.P.R. 994 (2009); Ríos v. Municipio Isabela, 159 D.P.R. 839 (2003); Fernández & Gutierrez v. Mun. San Juan, 147 D.P.R. 824, 829 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005 (1994).
En Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 249 (2007), fuimos enfáticos cuando señalamos “que los tribunales debemos velar por el cumplimiento con las disposiciones legales dirigidas a proteger los desembolsos públicos, ya que esta normativa tiene como fin proteger el interés público en los dineros del pueblo y no a las partes contratantes”. Por ende, la contratación con un municipio requiere de unos formalismos y procedimientos específicos que persiguen, precisamente, proteger el erario. Por esta razón, “la facultad del municipio de obligar fondos públicos para el pago de una obligación, está supeditada a que se sigan los procedimientos establecidos por ley”. Id., pág. 248.
El Art. 8.016 de la Ley de Municipios Autónomos de 1991 (21 L.P.R.A. see. 4366), también le impone a los municipios la obligación de mantener “un registro de todos los contratos que otorguen, incluyendo las enmiendas a los mismos y enviarán copia de éstos y de las escrituras de adquisición y disposición de bienes a la Oficina del Contralor de Puerto Rico, conforme a las sees. 97 et seq. del Título 2 y su Reglamento”. Véase el Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, 2 L.P.R.A. *1013 sec. 97. Es decir, para contratar con un municipio es nece-sario que: (1) el acuerdo se haya hecho constar por escrito; (2) se mantenga un registro fiel con miras a establecer la existencia del contrato; (3) se remita copia de éste a la Oficina del Contralor, y (4) se acredite la certeza de tiempo, esto es, que el contrato se otorgó quince días antes. Véanse: Colón Colón v. Mun. de Arecibo, supra, págs. 725-726; Lugo v. Municipio Guayama, supra, págs. 215-216; Las Marías v. Municipio San Juan, 159 D.P.R. 868, 878 (2003); Ríos v. Municipio Isabela, supra, págs. 845-846; Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 53-54 (1988). Estos requisitos deben ser observados rigurosamente, ya que su ausencia priva de eficacia y validez el acuerdo con el municipio. Lugo v. Municipio Guayama, supra, pág. 216. Sin embargo, aclaramos que con la aprobación de la Ley Núm. 127 de 31 de mayo de 2004 (2 L.P.R.A. sec. 97), el incumplimiento con el requisito de que todo contrato sea registrado y remitido a la Oficina del Contralor tal como lo exigen el Art. 1 de la Ley Núm. 18, supra, y el Art. 8.016 de la Ley de Municipios Autónomos de 1991, supra, no tiene el efecto de anular el contrato en controversia, aunque im-pide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a la Oficina del Contralor. Id. Véase, además, Quest Diagnostic v. Mun. San Juan, supra.
Cuando se trata de una contratación municipal, debemos tener en mente la clara política pública que impera a favor de la aplicación de una normativa restrictiva. Cordero Vélez v. Mun. de Guánica, supra, pág. 248; Lugo v. Municipio Guayama, supra, pág. 215. Todo esto responde a que la sana y recta administración pública es un asunto revestido del más alto interés público. Quest Diagnostic v. Mun. San Juan, supra; Cordero Vélez v. Mun. de Guánica, supra, pág. 248; Fernández & Gutierrez v. Mun. San Juan, supra. En vista de tan trascendental interés, hemos asegurado que en los casos de una contratación municipal, las partes privadas deben ejercer un rol más activo, toda vez *1014 que no están exentos del cumplimiento de la ley. Quest Diagnostic v. Mun. San Juan, supra; Cordero Vélez v. Mun. de Guánica, supra, pág. 251; Las Marías v. Municipio San Juan, supra, pág. 880; Lugo v. Municipio Guayama, supra, pág. 215.
Ahora bien, el cumplimiento con las disposiciones de la Ley de Municipios Autónomos no corresponde únicamente a las personas privadas. Los tribunales “desalentamos la práctica de incumplir con los procedimientos establecidos en la Ley de Municipios para el otorgamiento de contratos municipales”. Cordero Vélez v. Mun. de Guánica, supra, pág. 253. Por lo tanto, ningún municipio podrá satisfacer deuda alguna que no surja de un contrato que conste por escrito y que, a su vez, haya sido registrado y remitido a la Oficina del Contralor. La exigencia de que los contratos con los municipios consten por escrito responde a un requisito de carácter constitutivo que el legislador incluyó con el propósito de crear un “mecanismo profiláctico tendiente a evitar pagos y reclamaciones fraudulentas e ilegales”. Colón Colón v. Mun. de Arecibo, supra, pág. 726.
III
Sin lugar a dudas, cuando el Municipio acordó con la Corporación en 1995 la administración del CDT de Que-bradillas, no hubo más que acuerdos verbales entre las partes. Por ello, el Tribunal de Primera Instancia señaló en su sentencia que, como los requisitos de contratación con los municipios son de carácter constitutivo y no se cumplie-ron, no nació a la vida jurídica un contrato válido y exigible entre las partes. Por ende, el Tribunal de Primera Instan-cia concluyó que según Colón Colón v. Mun. de Arecibo, supra, al no existir un contrato escrito, no procedía la ac-ción en cobro de dinero presentada por el Municipio. El Tribunal de Apelaciones erró al confirmar esa conclusión y dictamen.
A través de toda la jurisprudencia en la que he- *1015 mos evaluado casos como éstos, hemos recalcado que “exi-gir que los contratos se reduzcan a escrito tiene una insos-layable dimensión de sana administración pública”. Colón Colón v. Mun. de Arecibo, supra, pág. 727. Véanse, ade-más: Fernández & Gutierrez v. Mun. San Juan, supra, pág. 829; Ríos v. Municipio Isabela, supra, pág. 845. Es decir, nuestra conclusión reiterada responde al principio subya-cente en la contratación con el gobierno: la confianza de nuestro pueblo en la correcta utilización del peculio público. Consiguientemente, cuando nos enfrentamos a controversias que involucren fondos públicos, los tribuna-les debemos vigilar principalmente que no se ponga en tela de juicio la utilización correcta del dinero de nuestro pueblo.
Así, aunque en Colón Colón v. Mun. de Arecibo, supra, determinamos que la acción en cobro de dinero incoada por el señor Colón Colón por los servicios brindados al Munici-pio de Arecibo no procedía ante la ausencia de un contrato por escrito entre las partes, nuestra conclusión a esos efec-tos no iba dirigida a favorecer sin razón alguna a los municipios. Más bien nuestro proceder siempre ha sido sal-vaguardar los fondos públicos. De esa forma honramos el valor cardinal que por años les hemos otorgado. En última instancia, de no hacerlo serían los intereses de nuestros ciudadanos los que se verían lesionados.
En los casos sobre contratación que hemos evaluado a la luz de la Ley de Municipios Autónomos, la parte perjudi-cada es un ente privado. En cambio, en la situación de hechos que hoy nos ocupa quien reclama el reembolso de dinero no es una persona privada sino el Municipio. Esa distinción es crucial. La Corporación sostiene que el Muni-cipio “pretende que este ... Tribunal... entienda y resuelva que una actuación nula de un Municipio, no puede enfor-zarse [sic] si es [en] contra de los intereses del Municipio pero, a contrario sensu, puede enforzarse [sic] si beneficia al Municipio”. Alegato de la parte recurrida, pág. 5. Esta conclusión es errada. Aquí no se trata de favorecer a un municipio. Se trata, como hemos dicho, de proteger el di *1016 ñero del pueblo. Si el Municipio desembolsó dinero público incorrectamente mediante un acuerdo nulo, tiene el dere-cho a recobrarlo. Si concluyéramos lo contrario, estaríamos dejando en manos privadas unos fondos públicos que no le corresponden.
Por esta razón, si el acuerdo entre las partes carece de eficacia, no procede que el Municipio desembolsara dinero alguno mediante un contrato que nunca advino a la vida. Después de todo, la fiscalización adecuada de los usos del erario resulta de vital importancia para mantener la con-fianza del ciudadano en el gobierno y la salud de nuestra democracia. Véase RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999).
Por otra parte, la Corporación afirma que constituye urna salida “ilegal, antijurídica e inmoral” que el Municipio pretenda que se cree una norma distinta para cuando es un municipio quien reclama, ya que “se estaría dando carta abierta a los municipios para que no cumplieran con la Ley Municipal y de esta manera decidieran ex parte qué contratos quieren cumplir y cuáles no quieren cumplir”. Alegato de la parte recurrida, págs. 10-11. Ese razona-miento no nos convence. No hacer la distinción cuando es un ente público el que reclama permitiría que un funciona-rio inescrupuloso favorezca a ciertos contratistas, pagándo-les de antemano por unos servicios, pero sin un contrato escrito, con la intención de que cuando se inicie el proceso legal de cobro de dinero, se pueda presentar como defensa que el contrato no cumple con los requisitos formales exi-gidos por ley y el contratista no tenga que devolver lo que se le pagó ilegalmente. Eso socavaría la política pública de “protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento”. Cancel v. Municipio de San Juan, supra, pág. 300.
Por consiguiente, en Colón Colón v. Mun. de Arecibo, supra, en protección del erario, no validamos la acción en cobro de dinero de un individuo contra un municipio. Por *1017 esa misma razón procede la acción de cobro a la inversa, de un municipio a un ente privado. Así lo exige el valor apre-miante que nuestro sistema jurídico le otorga a la sana administración de los fondos públicos.
La corrupción y el desembolso indebido o ilegal de fondos públicos —en sus formas múltiples, a veces burdas y otras sofisticadas— son actos incompatibles con el sistema de go-bierno democrático consagrado en nuestra Constitución y apuntalado en el respeto a la dignidad humana y los dineros del pueblo como único soberano. No importa las modalidades que adopten ni la jerarquía del funcionario involucrado, las mismas son intolerables. En última instancia, quien verdade-ramente se perjudica, no sólo en lo económico sino en lo moral, es la ciudadanía en general independientemente de su afilia-ción política. Es, pues, obligación de los tribunales reivindicar esos valores fundamentales. E.L.A. v. Soto Santiago, 131 D.P.R. 304, 322 (1992), citando A.E.E. y A.A.A. v. P.N.P., 128 D.P.R. 294, 294-295 (1991), voto concurrente del Juez Aso-ciado Señor Negrón García, al cual se unieron los Jueces Aso-ciados Señores Rebollo López y Andréu García.
Sin duda, no podemos validar la erogación de fondos públicos indiscriminadamente. Su utilización debe ser cuidadosa. E.L.A. v. Cole, 164 D.P.R. 608, 643 (2005). Es nuestro deber y responsabilidad velar por que los fondos públicos respondan directamente a las necesidades de la ciudadanía. Id.
Específicamente, en el contexto de la contratación guberna-mental, hemos dicho que la misma está revestida del más alto interés público en cuanto involucra el uso de bienes o de fon-dos públicos. Por eso deben aplicarse rigurosamente las nor-mas sobre los contratos y el desembolso de esos fondos para proteger los intereses y el dinero del Pueblo. Principalmente, no se puede ignorar que todo organismo gubernamental está obligado a observar cabalmente la esencia de las disposiciones constitucionales porque los fondos públicos sólo pueden gas-tarse para fines públicos legítimos. Art. VI, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1; De Jesús González v. A.C., 148 D.P.R. 255 (1999). C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 452 (2007).
*1018 > HH
Nos resta determinar qué remedio ampara al Municipio para obtener el reembolso de los fondos que fueron desem-bolsados ilegalmente. Al respecto, el Municipio indica que el foro intermedio erró al no resolver las mociones de sen-tencia sumaria a la luz de la doctrina de enriquecimiento injusto en su vertiente negativa. Por su parte, la parte re-currida niega la utilización de esta figura pues
[a] través de la jurisprudencia innumerables ciudadanos y personas particulares han brindado servicios a los municipios por cientos de miles de dólares y no han podido cobrar sus servicios por el requisito estatutario de que los contratos tie-nen que ser por escrito. Mal puede ahora el Municipio de Que-bradillas pretender que habiendo incurrido en la misma falla, que privó a todos estos ciudadanos y corporaciones de cobrar por sus servicios, no se aplique la letra de la ley y se permita que el Municipio continúe su reclamación. Alegato de la parte recurrida, pág. 11.
En Colón Colón v. Mun. de Arecibo, supra, pág. 728, señalamos que “conforme al alto interés público involu-crado, no hay cabida en estos casos para los remedios en equidad”. Ahora bien, no podemos perder de perspectiva que ese análisis lo hicimos fundamentándonos en el prin-cipio de que permitir una acción en equidad contra un mu-nicipio para exigir una prestación producto de un contrato nulo violaría la política pública establecida en la ley municipal.
Ahora bien, en E.L.A. v. Soto Santiago, supra, resolvimos que el término prescriptivo para instar una acción para el cobro de dinero con el objetivo de restituir unos fondos públicos obtenidos ilícitamente, es el de quince años dispuesto en el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Señalamos entonces que, “en su fondo, tratamos aquí con una situación que permite invocar el principio de derecho de que nadie debe enriquecerse injustamente a costa de otro”. E.L.A. v. Soto Santiago, supra, pág. 317.
Procede invocar el mismo principio aquí. Como no existe *1019 disposición legislativa expresa en la Ley de Municipios Au-tónomos de 1991 que atienda directamente este tipo de ac-ción legal por parte de los municipios cuando no existe un contrato escrito entre las partes, procede que resolvamos conforme a equidad. Art. 7 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 7.(2)
“La doctrina de enriquecimiento injusto es casi tan antigua como el Derecho mismo.” E.L.A. v. Cole, supra, pág. 632. “Esta figura se encuentra subsumida en la figura de los cuasicontratos.” Id. “Los cuasicontratos generan obligaciones a base del principio de que nadie debe enriquecerse u obtener lucro inequitativamente a costa del perjuicio de otro.” C.J. Irizarry Yunqué, Responsabilidad civil extracontractual: un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico, 6ta ed., 2007, pág. 3. “[E]s un principio general del derecho fundado en la equidad que informa todo el ordenamiento jurídico.” Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 822 (1988). “Es un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de justicia.” E.L.A. v. Cole, supra, pág. 632. Véase, además, Silva v. Comisión Industrial, 91 D.P.R. 891 (1965).
Recurrimos a esta figura cuando “la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente”. Ortiz Andújar v. E.L.A., supra. Véanse: Garriga, Hijo, Inc. v. Cond. Marbella, 143 D.P.R. 927, 933 (1997); E.L.A. v. Soto Santiago, supra, pág. 319. Véase, además, J. Puig Brutau, Fundamentos de derecho civil, Barcelona, Ed. Bosch, 1983, T. II, Vol. 3, pág. 44.
Por eso, el enriquecimiento injusto se configura únicamente cuando concurren los requisitos siguientes: (1) la existencia de un enriquecimiento; (2) un empobreci- *1020 miento correlativo; (3) una conexión entre el empobreci-miento y el enriquecimiento; (4) falta de causa que justifi-que el enriquecimiento, y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. Hatton v. Mun. de Ponce, supra, pág. 1010; Ortiz Andú jar v. E.L.A., supra, pág. 823.
La doctrina ha señalado que el enriquecimiento injusto puede darse en dos modalidades. E.L.A. v. Cole, supra, pág. 634. “[E]l positivo o aumento en el patrimonio 0lucrum, emergens), o el negativo o disminución del patrimonio (damnum cessans).” íd. Cuando hablamos de enriquecimiento injusto negativo (damnun cessans) o a la inversa nos referimos al caso en el que “ ‘un no gasto equivale a un ingreso. En otras palabras, en la medida en que alguien sufre una pérdida que ordinariamente debería padecer otro, el primero le ahorra un gasto al segundo. Esta situación no tiene cabida en un sistema donde impera lo justo y debe ser remediada’ ”. Id., págs. 634-635, citando a Ortiz Andújar v. E.L.A., supra, págs. 826-827.
En el pasado no hemos permitido que personas privadas invoquen remedios en equidad frente a los municipios con los que contratan, porque “es doctrina reiterada que dichos remedios no se aplicarán cuando resulte [n] contrario [s] a una clara política pública plasmada en un estatuto o en la Constitución”. Las Marías v. Municipio San Juan, supra, págs. 875-876. Véanse, además: Hatton v. Mun. de Ponce, supra, pág. 1010; Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 684-685 (1987). Del mismo modo, como excep-ción, sí le daremos paso a los remedios en equidad cuando no permitirlos resulte igualmente contrario a una política pública estatuida en una ley o en la Constitución.
Precisamente en el caso particular ante nuestra consi-deración se configura la excepción a la regla general de no permitir los remedios en equidad. No permitir la acción de enriquecimiento injusto sería contrario a la política pública de sana administración de los fondos públicos estatuida en la Ley de Municipios de 1991.
*1021 No hemos permitido que personas privadas invoquen remedios en equidad para recuperar sus inversiones por-que eso violaría el objetivo que se persigue con los requisi-tos formales de contratación que impone la Ley de Munici-pios Autónomos de 1991. Es decir, avalarlo iría contra el “gran interés del Estado en promover una sana y recta administración pública, [que prevenga] el despilfarro, la corrupción y el amiguismo en la contratación gubernamental”. Las Marías v. Municipio San Juan, supra, pág. 875. Véanse: Fernández & Gutierrez v. Mun. San Juan, supra, pág. 832; Hatton v. Mun. de Ponce, supra, 1006; Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988); Morales v. Municipio de Toa Baja, supra, pág. 693. De igual modo, no aplicar esta figura cuando quien reclama es un municipio, estaría opuesta a una sana ad-ministración pública, al dejar en manos privadas los fon-dos pblicos que le fueron desembolsados contra la ley. “[S]u efecto sería violentar principios de suma importancia en-carnados en la Constitución y las leyes del país.” E.L.A. v. Cole, supra, pág. 634. Véanse, Colón Colón v. Mun. de Arecibo, supra; Hatton v. Mun. de Ponce, supra.
Evaluada toda la doctrina reseñada, concluimos que procede la acción por cobro de dinero incoada por el Muni-cipio contra la Corporación, al amparo de la figura de en-riquecimiento injusto. Como hemos señalado en el pasado, “[l]as normas aplicables [a la contratación con los Municipios] persiguen proteger el interés público y no a las partes contratantes”. Morales v. Municipio de Toa Baja, supra, pág. 697. De este modo se logra una mayor transpa-rencia en la administración pública, a la vez que se pro-mueve la estabilidad, certeza y credibilidad en la contrata-ción municipal. El beneficiario mayor es, por consiguiente, el interés público. Las Marías v. Municipio San Juan, supra, pág. 881.
*1022 V
Por los fundamentos expuestos, se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro primario para procedimientos ulteriores que sean acordes con lo resuelto aquí.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita. La Jueza Asociada Señora Pabón Char-neco no intervino.

 Del informe sobre la conferencia preliminar entre abogados las partes esti-pularon que la Corporación es una persona jurídica sin fines de lucro. Se estipuló, a su vez, la reunión celebrada entre funcionarios del Municipio y la Corporación el 8 de enero de 1998. Por último, se hizo constar entre las estipulaciones la certificación de la Secretaría Municipal que reflejaba que no había ordenanza o resolución por parte de la legislatura municipal que autorizara al alcalde a contratar con la Corporación.

 Dispone que “[c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos”.